RECORD NUMBER: 13-2416(L)

# United States Court of Appeals

### *for the*

# Fourth Circuit

---

**AUTO-OWNERS INSURANCE COMPANY,**

*Appellant/Cross-Appellee,*

– v. –

**YVONNE ROBINSON, individually and as the Personal Representative of the Estate of Deagose F. Robinson, deceased, JOHN HENRY NEWSOME, III, SOUTH CAROLINA AUTOMOBILE DEALERS ASSOCIATION SELF INSURED FUND, THE RANDOLPH HOPE COMPANY, INC.,**

*Appellees/Cross-Appellants.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA AT FLORENCE**

# OPENING BRIEF OF APPELLANT

**MORGAN S. TEMPLETON**
**PEDEN BROWN MCLEOD, JR.**
**WALL TEMPLETON & HALDRUP, PA**
**145 King Street**
**Suite 300**
**Charleston, SC 29402**
**(843) 329-9500**

*Counsel for Auto-Owners Insurance Company*

**CP** **COUNSEL PRESS** • VA – (800) 275-0668

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __13-2416__      Caption: __Auto-Owners vs. John Henry Newsome, III, et al__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Auto-Owners Insurance Company__
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO

2.      Does party/amicus have any parent corporations?                    ☐YES ☑NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                  ☐YES ☑NO
        If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?   ☐YES ☑NO
If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature:  s/Morgan S. Templeton                Date:   November 27 2013

Counsel for:  Auto-Owners Insurance Company

# CERTIFICATE OF SERVICE
**************************

I certify that on   11/27/2013   the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

S. Randall Hood
McGowan Hood & Felder, LLC
1539 Health Care Drive, Rock Hill, SC 29732

Gerald Mallow
Mallow Law Firm
108 Cargill Way, Hartsville, SC 29550

Richard C. Thomas
P.O. Box 8448, Columbia, SC 29202

David Holler
Lee Erter Wilson Holler & Smith
P.O. Box 580, Sumter, SC 29151

Ray E. Chandler
Coffey, Chandler & Kent PA
P.O. Box 1292, Manning, SC 29101

s/Morgan S. Templeton                          11/27/2013
(signature)                                      (date)

# **TABLE OF CONTENTS**

Corporate Disclosure Statement

Table of Authorities ................................................................... iii

Jurisdictional Statement ............................................................ 1

Statement of the Issues............................................................. 1

Statement of the Case ............................................................... 1

    Statement of the Case ......................................................... 1

    Statement of Facts .............................................................. 4

        The Insurance Obtained by NMI................................. 4

        The Underlying Lawsuit........................................... 8

        American Modern Action.......................................... 8

        Evidence Admitted at Trial ....................................... 9

Summary of Argument............................................................. 12

Standard of Review ................................................................. 13

Argument................................................................................. 14

    I.    The District Court improperly admitted hearsay testimony
        from officer Godowns pursuant to Rules 801(d)(2)(A) and
        807 of the Federal Rules of Evidence ............................... 14

        Rule 801(d)(2)(A)....................................................... 14

        The Residual Exception – Rule 807................................ 19

II.   The District Court misinterpreted the "co employee" exclusion by failing to find that Robinson was performing duties related to the conduct of the insured's business or that Robinson was acting in the course and scope of his employment on October 7, 2009 ........................................................ 24

General Principals of South Carolina Insurance Law ....................... 24

Ambiguity ........................................................................................... 27

Employment Law Under South Carolina Law ................................... 31

Newsome III was not an Insured for causing injury to fellow employee ................................................................................... 37

III.  The District Court misinterpreted the "watercraft" exclusion by holding that test driving a watercraft owned by the insured constitutes "repair and service" triggering the "exception to the exclusion." ........................................................................................... 40

Conclusion ..................................................................................................... 48

Request for Oral Argument .......................................................................... 48

# TABLE OF AUTHORITIES

**Cases**

Akrabawi v. Carnes Co.,
    148 F.3d 688 (7th Cir. 1998) ........................................................ 21

American Modern Home Ins. Co. v. Newsome, Jr.,
    2011 WL 1671552 (D.S.C. 2011) .................................................. 8

Armstrong Word Industries, Inc. v. Aetna Casualty & Surety Co.,
    52 Ca.Reptr.2d 690 (1st Ct. App. Cal. 1996) ............................... 19

Auto-Owners Ins. Co. v. Rhodes,
    748 S.E.2d 781 (S.C. 2013) .......................................................... 30

B.L.G. Enterprises, Inc. v. First Financial Ins. Co.,
    514 S.E.2d 327 (S.C. 1999) .......................................................... 24

Baxter v. Palmigiano,
    425 U.S. 308 (1976)...................................................................... 23

Beam v. State Workmen's Compensation Fund,
    200 S.E.2d 83 (S.C. 1973) ....................................................... 31, 40

Bevans v. Liberty Mut. Ins. Co.,
    356 F.2d 577 (4th Cir. 1966) ............................................. 27, 28, 39

Breezewood of Wilmington Condo. Homeowers' Ass'n, Inc. v. Amerisure
Mut. Ins. Co.,
    335 F.App'x 268 (4th Cir. 2009) .................................................. 29

Brown v. United States,
    356 U.S. 148 (1958)...................................................................... 23

Bruton v. United States,
    391 U.S. 123 (1968)...................................................................... 15

Campbell, Inc. v. Northern, Ins. Co. of New York,
    337 F. Supp.2d 764 (D.S.C. 2004) ............................................... 43

Colony Ins. Co. v. Burke,
    698 F.3d 1222 (10th Cir. 2012) ............................................................ 18, 30

Crane v. Royal Ins. Co. of America,
    17 F.3d 1186 (9th Cir. 1994) ...................................................................... 43

Crook v. State Farm Mut. Auto. Ins. Co.,
    112 S.E.2d 241 (S.C. 1960) ........................................................................ 29

Derflinger v. Ford Motor Co.,
    866 F.2d 107 (4th Cir. 1989) ...................................................................... 27

ePlus Tech., Inc. v. Aboud,
    313 F.3d 166 (4th Cir. 2002) ...................................................................... 23

Erie Railroad v. Thompkins,
    304 U.S. 64 (1938).................................................................................... 24

First Nat'l State Bank v. Commonwealth Fed. Sav. & Loan,
    610 F.2d 164 (3d Cir. 1980) ...................................................................... 30

First Speciality Ins. Corp. v. American Home Assurance Co.,
    558 F.3d 97 (1st Cir. 2009)........................................................................ 43

Gamble v. Travelers Ins. Co.,
    160 S.E.2d 523 (S.C. 1979) ...................................................................... 26

General Acc. Ins. Co. v. Safeco Ins. Companies,
    443 S.E.2d 813 (S.C. Ct. App. 1994) ................................................. *passim*

Godfrey v. Irvin,
    871 F. Supp. 577 (W.D. N.Y. 1994)........................................................... 20

Helena Chem. Co. v. Allianz Underwriters Ins. Co.,
    594 S.E.2d 455 (S.C. 2004) ...................................................................... 26

Helms Realty, Inc. v. Gibson-Wall Co.,
    611 S.E.2d 485 (S.C. 2005) ...................................................................... 30

Jones v. B. C. Christopher & Co.,
    466 F.Supp. 213 (D.Kan.1979) ..................................................... 22

Jones v. Elbert,
    34 S.E.2d 796 (S.C. 1945) ................................................... 3, 34, 40

Kinsella v. Wyman Charter Corp.,
    417 F. Supp.2d 159 (D. Mass. 2006) ............................................. 43

Kleckley v. Northwestern National Cas. Co.,
    526 S.E.2d 218 (S.C. 2000) ......................................................... 28

Laidlaw Environmental Services, Inc. v. Aetna Cas. & Sur. Co. of Illinois,
    524 S.E.2d 847 (S.C. Ct. App. 1999) .......................................... 44

Loges v. Mack Trucks, Inc.,
    417 S.E.2d 538 (S.C. 1992) ......................................................... 31

Long v. Adams,
    312 S.E.2d 262 (S.C. Ct. App. 1984) .......................................... 44

Maketa v. Butcher,
    45 A.2d 256 (Pa. 1946) ............................................................... 37

Maxwell v. Maxwell,
    588 F.3d 245 (4th Cir. 2009) ...................................................... 13

McMellon v. United States,
    387 F.3d 329 (4th Cir. 2004) (en banc) ..................................... 27

McPherson v. J.E. Sirrine & Co.,
    33 S.E.2d 501 (S.C. 1945) ..................................................... 25, 40

McPherson By and Through McPherson v. Michigan Mut. Ins. Co.,
    412 S.E.2d 445 (S.C. Ct. App. 1991) .......................................... 30

Nautilus Ins. Co. v. Winchester Homes, Inc.,
    15 F.3d 371 (4th Cir. 1994) ........................................................ 29

Opper v. United States,
        348 U.S. 84 (1954)........................................................ 17

Park v. Safeco Ins. Co. of America,
        162 S.E.2d 709 (S.C. 1968) ................................... 28, 31

Perez v. Mountaire Farms, Inc.,
        650 F.3d 350 (4th Cir. 2011) ...................................... 13

People v. Holcomb,
        532 P.2d 45 (Colo. 1975).............................................. 20

Rhame v. National Grange Mut. Ins. Co.,
        238 S.C. 539, 121 S.E.2d 94 (1961) ...................... 25, 26

S.C. Dep't of Natural Res. v. Town of McClellanville,
        345 S.C. 617, 550 S.E.2d 299 (2001) ......................... 26

S. C. Farm Bureau Mut. Ins. Co. v. Wilson,
        544 S.E.2d 848 (S.C. Ct. App. 2001) ......................... 44

S.C. Ins. Co. v. White,
        390 S.E.2d 471 (S.C. Ct. App. 1990) ......................... 42

SEC v. Graystone Nash, Inc.,
        25 F.3d 187 (3d Cir.1994) ...................................... 22, 23

Schulmeyer v. State Farm Fire & Cas Co.,
        579 S.E.2d 132 (S.C. 2003) ........................................ 25

Shupe v. Settle,
        445 S.E.2d 651 (S.C. Ct. App. 1994) ......................... 30

Silver v. Abstract Pools and Spas, Inc.,
        658 S.E.2d 539 (S.C. Ct. App. 2008) ......................... 40

Simpson v. Bridgestone/Firestone, Inc.,
        1994 WL 171680 (D. Kan. April, 1994) .................. 45, 46

Smith v. United States,
    348 U.S. 147 (1954).................................................................. 17

Sunex Int'l Inc. v. Travelers Ins. Co.,
    185 F. Supp.2d 614 (D.S.C. 2001) .......................................... 26

Tome v. United States,
    513 U.S. 150 (1995).................................................................. 19

Torrington Co. v. Aetna Cas. & Sur. Co.,
    216 S.E.2d 547 (S.C. 1975) ...................................................... 42

Travelers Indem. Co. v. Kinney,
    28 F.3d 1210 (4th Cir. 1994) .................................................... 25

Unison Ins. Co. v. Hertz Rental Corp.,
    436 S.E.2d 182 (S.C. Ct. App. 1993) (reh'g denied) ................ 24

U.S. v. Hay,
    122 F.3d 1233 (9th Cir. 1997) .................................................. 16

U.S. v. Lancaster,
    96 F.3d 734 (4th Cir. 1996) ...................................................... 20

U.S. v. Lam Lek Chong,
    544 F.2d 58 (2d Cir. 1976) ........................................................ 15

U.S. v. Ruff,
    717 F.2d 855 (3d Cir. 1983) ...................................................... 15

U.S. v. Weinrich,
    586 F.2d 481 (5th Cir. 1978) .................................................... 15

U.S. v. Wilson,
    490 F. Supp. 713 (E.D. Mich. 1980), aff'd on other grounds,
    639 F.2d 314 (6th Cir. 1981) .................................................... 15

United States v. Archbold-Newball,
    554 F.2d 665 (5th Cir. 1977) .................................................... 14

United States v. Certain Real Prop. & Premises Known as 4003-4005
5th Ave., Brooklyn, N.Y.,
     55 F.3d 78 (2d Cir. 1995) ............................................................ 22

United States v. Dunford,
     148 F.3d 385 (4th Cir.1998) ........................................... 19, 20, 21

United States v. Mitchell,
     429 Fed.Appx. 271 (4th Cir.2011) ............................................ 19

United States v. O'Connell,
     703 F.2d 645 (1st Cir.1983)........................................................ 17

United States v. Payden,
     622 F. Supp. 915 (S.D. N.Y. 1985) .......................................... 15

United States v. Rylander,
     460 U.S. 752 (1983)................................................................... 24

United States v. Singleterry,
     29 F.3d 733 (1st Cir. 1994)....................................................... 17

United States v. Young,
     248 F.3d 260 (4th Cir. 2001) .................................................... 13

Wakefield v. Twin City Fire Ins. Co.,
     2007 WL 2200597 (Conn. Super. Ct. July 5, 2007).................... 45

Warszower v. United States,
     312 U.S. 342 (1941).................................................................. 17

Wehling v. Columbia Broad. Sys.,
     608 F.2d 1084 (5th Cir. 1979) .................................................. 22

Yarborough v. Phoenix Mut. Life Ins. Co.,
     225 S.E.2d 344 (S.C. 1976) ...................................................... 25

Zee Co. Inc., v. Williams, Mullen, Clarke, & Dobbins, PC,
     871 F. Supp.2d 498 (E.D. Va. 2012) ................................... 19, 21

**Rules and Statutes**

28 U.S.C. § 1291 ................................................................................... 1

28 U.S.C. § 1332(a) .............................................................................. 1

28 U.S.C. § 2201 ................................................................................... 1

Fed.R.Civ.P. 26(b) .............................................................................. 23

Fed. R. Evid. 403 ................................................................................ 18

Fed. R. Evid. 801(D)(2)(A) ................................................... 1, 14, 15, 16

Fed. R. Evid. 807 .................................................................... 1, 14, 19

South Carolina Code Ann., § 38-61-10 ............................................... 25

**Constitutional Amendments**

Fifth Amendment ............................................................................ 18, 23

**Other Authorities**

8 J. Wigmore, Evidence 439 (McNaughton rev. 1961) ........................... 23

Merriam-Webster's Collegiate Dictionary 1070 (10th ed 1993) ............... 43

## JURISDICTIONAL STATEMENT

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 because this is an appeal from a Final Judgment entered by the United States District Court for the District of South Carolina on October 28, 2013. See Joint Appendix ("JA 609").  The District Court had subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1332(a) and 2201.  The amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties involved are citizens of different states.   JA 585-87.

## STATEMENT OF THE ISSUES

I.     THE DISTRICT COURT IMPROPERLY ADMITTED HEARSAY TESTIMONY FROM OFFICER GODOWNS PURSUANT TO RULES 801(D)(2)(A) AND 807 OF THE FEDERAL RULES OF EVIDENCE.

II.    THE DISTRICT COURT MISINTERPRETED THE "CO EMPLOYEE" EXCLUSION BY FAILING TO FIND THAT ROBINSON WAS PERFORMING DUTIES RELATED TO THE CONDUCT OF THE INSURED'S BUSINESS OR THAT ROBINSON WAS ACTING IN THE COURSE AND SCOPE OF HIS EMPLOYMENT ON OCTOBER 7, 2009.

III.   THE DISTRICT COURT MISINTERPRETED THE "WATERCRAFT" EXCLUSION BY ITS HOLDING THAT TEST DRIVING A WATERCRAFT OWNED BY THE INSURED CONSTITUTES "REPAIR AND SERVICE" TRIGGERING THE "EXCEPTION TO THE EXCLUSION."

## STATEMENT OF THE CASE

### Statement of the Case

Unlike any other reported decision emanating from South Carolina, Auto-Owners and its policyholder *agree* that coverage should not exist under the garage

liability policy *because* on October 7, 2009, Deagose F. Robinson ("Robinson") was an employee of John Newsome, Inc. ("JNI") and he was performing duties related to the conduct of JNI's business when he died in a work related accident. Despite the understanding between the contracting parties, and without any deference to those parties, the District Court:  (1) embraced the view of Robinson who, under South Carolina law, has no standing to litigate the issue in the first instance; (2) admitted hearsay to support its factual conclusion; (3) discounted evidence which clearly dictates an opposite factual result; and (4) misconstrued existing South Carolina law all in order to find that coverage exists under a garage liability policy. Additionally, the District Court erred by finding the policy ambiguous and reading into the contract words which were not contained therein, so as to find that a test drive of a watercraft owned by the insured is equivalent to service and repair of the watercraft, in order to trigger an "exception to the exclusion."

This action was commenced February 16, 2012, as a declaratory judgment action seeking an interpretation of a garage liability insurance policy of insurance issued to Newsome Management Company, Inc, ("NMI").[1]  JNI was an additional

---

[1] A CGL and umbrella policy issued by Auto Owners were included in this action; however, the Court granted summary judgment and ruled that no coverage existed under these two policies. JA 115-16.

named insured on the NMI policy.  JNI employed John Newsome, III ("Newsome III") and Robinson.  JA 247; 249.  Auto-Owners sought a declaration that the garage liability policy does not provide coverage to Newsome III for a lawsuit pending in the South Carolina Court of Common Pleas for the Fourth Judicial Circuit, Darlington County, styled as:  <u>Yvonne Robinson, Individually and as the Personal Representative of the Estate of Deagose F. Robinson, Deceased v. John Henry Newsom, III</u>, and numbered as 2010-CP-16-295 (hereinafter referred to as "the Underlying Action").  JA 497-502.  The Underlying Action has not been tried to verdict and has not settled.

The Underlying Action seeks money damages arising out of the alleged negligent operation of a watercraft by Newsome III on Lake Prestwood, South Carolina on October 7, 2009, which resulted in the death of Robinson.  JA 497-502.  Auto-Owners and its insured contend that Robinson was an employee of JNI performing "some act" in furtherance of the business or duties related to the conduct of JNI's business at the time of the accident which triggers the "co employee" exclusion within the policy.  <u>Jones v. Elbert</u>, 34 S.E.2d 796, 798-99 (S.C. 1945)("If the servant is doing some act in furtherance of the master's business, he will be regarded as acting within the scope of his employment . . . .").  Alternatively, Auto-Owners contends that at the time of the accident, the insured's watercraft was being *operated*, as opposed to being *repaired or serviced*, which triggers the "watercraft"

exclusion.

On June 19, 2013, the District Court denied Auto-Owners' motion for summary judgment as to the garage policy. JA 114-132. A bench trial was held on September 17, 2013. JA 583. The District Court entered its Findings of Fact and Conclusions of Law on October 25, 2013, rejecting Auto-Owners arguments *in toto* and holding that coverage exists under the garage policy. JA 583-608. This appeal was filed November 22, 2013. JA 611.

## Statement of Facts

### *The Insurance Obtained by NMI*

Auto-Owners sold a garage liability policy to NMI. JA 203. While the policy was sold to NMI, it had multiple additional named insureds, including JNI. JA403; 484. Newsome III was employed by JNI, as was Robinson. JA 247-249. Newsome III is not a "named insured," under the policy, therefore he must qualify as an insured under the policy by definition, which he does as long as he is an employee of JNI in the course and scope of his employment and does not cause bodily injury to a co-employee. JA 436-37. The entire garage policy was entered into evidence. JA 162; 403. The pertinent language of the policy is as follows:

### SECTION I - Definitions

To understand this policy, **you** must understand the meaning of the following words. These words appear in **bold face type** whenever used in

-4-

this policy and attached amendatory forms.

\*        \*        \*

**M.    Insured** means any person or organization qualifying as such under **SECTION III - WHO IS AN INSURED.**

\*        \*        \*

**HH.  Watercraft** means a conveyance capable of being used as a means of transportation on water.  This does not include aircraft or hovercraft.

\*        \*        \*

**SECTION II - COVERAGE**

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.    COVERAGE**

> **a.    Bodily Injury and Property Damage Liability (Other Than Auto)**
>
> > **(1)    We** will pay those sums that **you** become legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies . . .

\*        \*        \*

**2.    EXCLUSIONS**

> **a.    Bodily Injury And Property Damage Liability (Other Than Auto) and Bodily Injury And Property Damage Liability (Auto)**
>
> This insurance does not apply to:

-5-

**(3)**     Any obligations that would be payable under an unemployment compensation law, workers compensation law, disability benefits law or any similar law.

**b.     Bodily Injury And Property Damage Liability (Other Than Auto)**

This insurance does not apply to:

*          *          *

**(2)     Bodily injury** to:

(a)     An **employee** of the **insured** arising out of and in the course of employment by the **insured** . . .

**(3)     Bodily Injury** or **property damage** arising out of the ownership, maintenance, use or entrustment to others of any aircraft, **auto** or **watercraft** owned or operated by or rented or loaned to any **insured**.  Use includes operation and **loading** or **unloading**.

This exclusion applies even if the claims against any **insured** alleged negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **insured**, if the **occurrence** which caused the **bodily injury** or **property damage** involved the ownership, maintenance, use or entrustment to others of any aircraft, **auto** or **watercraft** that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

*          *          *

**(C)**     Any **watercraft** while being serviced or repaired by any **insured.**

-6-

\*          \*          \*

## SECTION III - WHO IS AN INSURED

**A.**    With respect to operations in **your** business as described under **SECTION II - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. COVERAGE, a. Bodily Injury And Property Damage Liability (Other Than Auto), COVERAGE B AND COVERAGE C**:

    **1.**    If **you** are designated in the Declarations as:

        \*          \*          \*

        **d.**    An organization other than a partnership, joint venture or limited liability company, **you** are an **insured**. **Your executive officers** and directors are **insureds**, but only with respect to their duties as **your** officers or directors. . .

        \*          \*          \*

    **2.**    Each of the following is also an **insured**.

        **a.**    **Your employees**, other than either **your executive officers** (if **you** are an organization other than a partnership, joint venture or limited liability company) . . ., but only for acts within the scope of their employment by **you** or while performing duties related to the conduct of **your** business. . . However, none of these **employees** . . . are **insureds** for **bodily injury** . . .

            **(1)**    . . . to a co **employee** while in the course of his or her employment or performing duties related to the conduct of **your** business . . .

JA 403; 416; 419-21; 425.

-7-

### *The Underlying Lawsuit*

Yvonne Robinson, individually, and as the Personal Representative of the Estate of Deagose F. Robinson, alleges that on October 7, 2009, Robinson was a passenger in a boat owned and driven by Newsome III.  JA 497-98.  The complaint further alleges that the boat was a "38 foot top gun cigarette boat."  JA 498.  The complaint alleges that "[a]s the owner and operator of the boat" Newsome III had a duty and obligation to maintain certain safety standards.  JA 498.  It is alleged that Newsome III was driving the boat in an erratic and unsafe manner when Newsome III and  Robinson were thrown from the boat resulting in Robinson's death.  JA 499.  Newsome III tendered the claim to Auto-Owners for a defense and indemnification.  JA 484-96.  Auto-Owners agreed to defend the Underlying Lawsuit pursuant to a reservation of rights.  JA 484.  The Underlying Lawsuit remains pending.

### *American Modern Action*

Previously, the Honorable Margaret B. Seymour determined that the maritime insurance policy on the subject watercraft was *void ab initio* under the doctrine of *uberrimae fidei*.  American Modern Home Ins. Co. v. Newsome, Jr., 2011 WL 1671552 (D.S.C. 2011).  Judge Seymour also concluded that the watercraft was owned by JNI.  Id.  The decision of Judge Seymour was not appealed.

### *Evidence admitted at Trial*

Virginia Adams ("Adams") testified that Robinson was a full-time employee, and she was not aware of Robinson ever taking days or afternoons off. JA 243. She stated that Robinson's normal working hours were "8:00 to 5:00" from "Monday through Friday." JA 206; 121. Adams agreed that some of Robinson's duties were to run errands at times, take cars to auction or help bring them back to the auction, as well as doing yard work off JNI property. JA 243. She stated that Robinson would have been paid by JNI for these types of services. JA 243.

Adams testified that Robinson's timecard showed that on the date of the incident that "7:57 is when he clocked in for the morning, 1:16 is when he clocked out for lunch, and came back from lunch at 1:58." JA 205. Adams testified that she handwrote 5:00 on Robinson's timecard "to show what time I used to compile the hours that he was paid." JA 206. She stated that "he normally left at 5:00, so I made it a complete day." JA 206. When asked whether Ms. Adams - the person in charge of his payroll - had any reason to believe that Robinson was not working on October 7, 2009, she testified "No." JA 244. Furthermore, Adams testified that JNI issued a paycheck for Robinson's work on October 7, 2009, in the amount of $63.67. JA 206. October 7, 2009, was a Wednesday. JA 211.

According to an investigating South Carolina Department of Natural Resources

-9-

("DNR") officer the boat was taken to Lake Prestwood on October 7, 2009, to see how it ran after some repairs to the boat were completed. JA 309. The boat was a 38 foot long twin engine boat. JA 249. The boat required a three axle trailer, and based upon a review of the photographs in evidence, is of significant size, dimension, and displacement. JA 250; 538-39; 542.

John Newsome, Jr. testified that "[a]s far as maneuver - - getting it in and out of the water, you'd need help," and that "[i]t would be almost impossible for one person to do it." JA 250-51. The boat had some work done and it was taken out to see how it ran. JA 345-46. While the boat was being operated, Newsome III and Robinson were ejected. JA 345-46. Robinson subsequently drowned. JA 506-07. Robinson was wearing a company issued uniform shirt bearing the name of "John Newsome Super Store" at the time of his death. JA 209; 508-11.

The lower unit of the engine, also known as the foot, was repaired prior to the vessel being launched into the lake. JA 251. At the time of Robinson's unfortunate death the boat was being operated and was not being repaired or serviced. JA 356. In fact, Officer Godowns testified that any active repairs to the foot would have been impossible while the boat was being operated. JA 357. Taking the evidence in the light most favorable to Robinson and Newsome III, the boat was being "tested" while on Lake Prestwood following the completion of repairs to the lower unit of the boat's

-10-

engines. JA 345-47. This does not change the fact that by testing the boat, Newsome III operated the boat. JA 356. Further, Robinson's widow testified that Robinson never went on a lake before, never mentioned a desire to ride in the boat, could not swim, and had never previously gone fishing or on a boat with Newsome III. JA 388-89.

The reason for taking the boat to Lake Prestwood was to test the engines on a boat owned by JNI which was subsequently to be sold for a profit; logically, testing the boat must be in the furtherance of JNI's business. JA 247; 345-46. While one DNR officer testified, over the objection of counsel, that Newsome III stated that "Robinson was at the lake for a joy ride," this statement was not recorded in any law enforcement reports. JA 309; 325. Furthermore, it does not make sense in the context of Mr. Robinson's history of never being on a boat or never having any desire to voluntarily go on a boat for fun – per his wife. JA 388-89. DNR officers confirmed that Newsome III was injured and was in shock following the accident which makes any statement from him of limited persuasion given his mental/physical condition at the time the statement was allegedly made. JA 318.

## SUMMARY OF ARGUMENT

First, the District Court improperly considered hearsay evidence by allowing Department of Natural Resources ("DNR") Officer Godowns to testify that Newsome III said Robinson's purpose for being at Lake Prestwood was for a "joy ride." The statement was not corroborated in writing anywhere *and* a separate analysis as to its admissibility as to Auto-Owners was not given. The residual hearsay exception is inapplicable *because* the trustworthiness of the statement is missing due to the fact that the District Court did not adequately consider the circumstances in which the statement was made, or the context in which it was used against Auto-Owners.

Second, the District Court erred in concluding that the "co employee" exclusion did not apply when it failed to give any deference to the fact that Auto-Owners *and* its policy holder agreed upon *their* contract, and without any deference to those parties, the District Court embraced the view of Robinson who, under the law, has no standing to litigate the issue in the first instance, admitted hearsay to support its factual conclusion, ignored evidence which clearly dictates an opposite conclusion, and misconstrued existing South Carolina law in order to conclude that coverage exists under the garage liability policy.

Third, the "co-employee" exclusion applies in two contexts, and the District Court improperly rejected both. In reaching its conclusion, the District Court applied

a strict approach to the nature of the work Robinson was hired to perform, rather than the proper standard interpreting whether one is in the scope of employment articulated by the South Carolina Supreme Court. Despite rejecting the notion that Newsome III's refusal to testify in this matter would not be used against Auto-Owners, the District Court plainly found that decision detrimental to Auto-Owners who had both a contractual right to information *and* is a mere third party to any criminal proceeding for which negative inferences are not designed to punish.

Finally, the District Court erred by finding the policy ambiguous and reading into the contract words which were not contained therein, so as to conclude that a test drive of an insured's watercraft is equivalent to service and repair of the watercraft in order to trigger an "exception to the exclusion."

## STANDARD OF REVIEW

The District Court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo*. Perez v. Mountaire Farms, Inc., 650 F.3d 350 (4th Cir. 2011); see also Maxwell v. Maxwell, 588 F.3d 245 (4th Cir. 2009). The District Court's evidentiary ruling is subject to the abuse of discretion standard. United States v. Young, 248 F.3d 260 (4th Cir. 2001).

-13-

## ARGUMENT

**I.    THE DISTRICT COURT IMPROPERLY ADMITTED HEARSAY TESTIMONY FROM OFFICER GODOWNS PURSUANT TO RULES 801(D)(2)(A) AND 807 OF THE FEDERAL RULES OF EVIDENCE.**

### *Rule 801(d)(2)(A)*

Federal Rule of Evidence 801(d)(2)(A) addresses certain statements which are not hearsay if conditions are met.  According to the Rule, an opposing party's statement is not hearsay if "the statement is offered against an opposing party and: (A) was made by the party in an individual or representative capacity . . . ."  Fed R. Evid. 801(d)(2)(A).  In the case at bar, a DNR officer testified that Newsome III was *overheard* stating that Robinson was on the watercraft for a "joy ride."  Bearing in mind that this statement was not recorded in any DNR report, was a statement not directly made to law enforcement, was first reported some four years after the event in this proceeding, and that the evidence in this matter demonstrates that Newsome III sustained injuries during the accident and exhibited signs of shock, the District Court placed overwhelming weight upon Newsome III's statement. JA 593; 597.  While the statement was admitted under Rule 801(d)(2)(A) as an admission by Newsome III, it was used by the Court *against* Auto-Owners which was improper.  United States v. Archbold-Newball, 554 F.2d 665, 677 (5th Cir. 1977) (holding that an analysis of the admissibility of an admission must be considered as if the two defendants were being

-14-

tried separately)(citing Bruton v. United States, 391 U.S. 123 (1968). Here, the court used the statement of Newsome III against Auto-Owners, who, of course, made no admission or statement at all. This case does not involve a conspiracy and, thus, Newsome III and Auto-Owners retained separate identities. Id.

Simply because statements may be admissible to one party, they may not be admissible to another. United States v. Payden, 622 F. Supp. 915, 919 (S.D. N.Y. 1985); U.S. v. Lam Lek Chong, 544 F.2d 58 (2d Cir. 1976)(holding defendant's post arrest statement to arresting officers, which implicated himself and a co-defendant in a conspiracy to import heroin, was admissible as an admission of a party-opponent under Rule 801(d)(2)(A), but not as to the co-defendant); U.S. v. Ruff, 717 F.2d 855 (3d Cir. 1983)(holding error in admitting a kid-napping co-conspirator's un-redacted extrajudicial statements under Rule 801(d)(2)(A) because they implicated the defendant and the error was not cured by the courts cautionary instruction, but sustaining conviction as there was overwhelming evidence of guilt as to render the error harmless); U.S. v. Weinrich, 586 F.2d 481 (5th Cir. 1978)(affirming admission of statements pursuant to Rule 801(d)(2)(A) where court took the precaution of excising all references to other defendants and warning the jury that the statement was admissible only against the defendant who made it); U.S. v. Wilson, 490 F. Supp. 713 (E.D. Mich. 1980), aff'd on other grounds, 639 F.2d 314 (6th Cir. 1981)(in conspiracy

case court refused to admit statements of one Defendant about another); <u>U.S. v. Hay</u>, 122 F.3d 1233 (9th Cir. 1997)(statement made by defendant to a state insurance department investigator, admitting that he had written a letter that formed the basis of the mail fraud charges against him was admissible against that defendant under the party admission exemption of Rule 801(d)(2)(A), but inadmissible as to the co-defendant).

Here, the District Court admitted a statement made by Newsome III, which was allegedly *overheard* by law enforcement, and applied it against Auto-Owners. However, the District Court did not consider the admission in the context of the case. Newsome III is the alleged insured who has a pecuniary interest in the existence of insurance coverage. Newsome III took the position that Robinson was not on a "joy ride," but rather was working at the time of his death.[2] While the District Court admitted testimony that was detrimental to Newsome III's position, it is Auto-Owners that suffers the consequence. Intuitively, the admission of the statement is actually to the benefit of Newsome III, because it creates the foundation for the court "finding coverage," thus, the admission of the statement is not being offered against Newsome III, but rather, Auto-Owners.

---

[2] <u>See</u>, *infra*, n.5.

The District Court supported its analysis by relying upon criminal cases involving multiple defendants. JA 592-93. By approaching it from this perspective, Newsome III's statement was treated as a *quasi* "confession" that Robinson was *solely* at the lake for the purposes of a "joy ride." Thus, the trustworthiness of the confession is critical, invoking the "general rule . . . that a jury cannot rely on an extrajudicial, post-offense confession, even when voluntary, in the absence of 'substantial independent evidence which would tend to establish the trustworthiness of [the] statement.'" <u>United States v. Singleterry</u>, 29 F.3d 733, 737 (1st Cir. 1994)(quoting <u>Opper v. United States</u>, 348 U.S. 84, 93 (1954)(citing <u>Smith v. United States</u>, 348 U.S. 147 (1954); <u>Warszower v. United States</u>, 312 U.S. 342 (1941); <u>United States v. O'Connell</u>, 703 F.2d 645 (1st Cir.1983)). The Supreme Court has explained that independent proof of the commission of the crime is not the only means of establishing the trustworthiness of the confession, but corroboration by independent evidence bolstering the confession itself may be sufficient. <u>Smith v. United States</u>, 348 U.S. 147, 156 (1954). Here, there was nothing that supported the statement, but rather there is evidence that contradicts the statement. The notion of Robinson being on a "joy ride" was not documented in any DNR reports. JA 325. No witness to whom Newsome III was allegedly speaking testified and/or supported the officer "overhearing" the statement. Further, the testimony is counterintuitive to the other

evidence presented demonstrating Robinson was working on October 7, 2009.  JA 204-06; 282; 505-06; 509; 515-17.

Finally, the admission of the statement was unduly prejudicial as to Auto-Owners pursuant to Rule 403 of the Federal Rules of Evidence.  JA 133-40; 180-83.  One of the issues during the trial surrounded Newsome III's assertion of his Fifth Amendment privilege against self incrimination.  Robinson advanced the argument that she should receive a negative inference in light of Newsome III's refusal to testify.  Auto-Owners also argued that it should receive a negative inference, thus, in essence cancelling the two inferences out.  One of the points advanced by Auto-Owners was that Newsome III has a duty to cooperate under the subject policy and provide Auto-Owners with information necessary to defend/analyze the case.  JA 440.  Here, Auto-Owners could not compel Newsome III to do anything, despite a contractual requirement that he cooperate.  An uncorroborated statement of Newsome III was admitted over the objection of Auto-Owners with no ability to extract information from Newsome III to refute it.  The irony in the matter is that while Newsome III maintained his silence, that silence was used against Auto-Owners to the net benefit of Newsome III.  While Robinson is the claimant ultimately seeking to recover indemnity dollars, the intent of third party liability insurance is to protect the insured - not the claimant.  Colony Ins. Co. v. Burke, 698 F.3d 1222, 1229-30 (10th

Cir. 2012)(purpose of third party liability insurance is to protect the insured from claims of others); Armstrong Word Industries, Inc. v. Aetna Casualty & Surety Co., 52 Ca.Reptr.2d 690, 719 (1st Ct. App. Cal. 1996)("purpose of third party liability insurance is to protect the insured against injuries to third parties"). Here, Newsome III is clearly benefitted by the existence of liability insurance. The admitted evidence was unduly prejudicial to Auto-Owners and should have been excluded.[3]

### *The Residual Exception – Rule 807*

Without citation to any authority, the District Court used as an alternative basis for the admission of the "joy ride" statement, the Residual Exception. JA 592-93. The Supreme Court has held that this rule exists for the circumstance "[w]hen a party seeks to introduce out-of-court statements that contain strong circumstantial indicia of reliability, that are highly probative on the material questions at trial, and that are better than other evidence otherwise available." Tome v. United States, 513 U.S. 150, 166 (1995). The statements must carry "circumstantial guarantees of trustworthiness' equivalent to those embodied in the traditional, codified [hearsay] exceptions," which is "[t]he most important element" of the residual exception. Zee Co. Inc., v. Williams, Mullen, Clarke, & Dobbins, PC, 871 F. Supp.2d 498, 505 (E.D. Va. 2012)(citing United States v. Mitchell, 429 Fed.Appx. 271, 274 (4th Cir.2011); United States v.

---

[3] This will be further discussed, *infra*, in the Residual Exception discussion.

Dunford, 148 F.3d 385, 393 (4th Cir.1998)).  The focus on this inquiry, in the Fourth

Circuit, "chiefly concerns not whether the statements were actually *made*, but rather

whether the statements are substantively *true*.  Id. at n. 11 (emphasis added).

In this instance, the District Court focused upon the fact that the statement was

made in the presence of a law enforcement officer as the basis for its trustworthiness.

JA 593.    Newsome III made these comments to others, not directly to law

enforcement. JA 303; 309; 593.  This conclusion is problematic for at least three

reasons: (1) it assumes that it is trustworthy simply because law enforcement

overheard it; (2) it was not recorded anywhere in law enforcement reporting; and (3)

it fails to take into consideration the circumstances in which the statement was

allegedly made.

First, there is no blanket rule that because a statement is made in the presence

of law enforcement it is true.[4]  Second, if the statement were true, it presumably would

_____

[4] The Fourth Circuit has recognized that police officers testimony does not
carry any more weight than that of any other witness when selecting a jury.  U.S. v.
Lancaster, 96 F.3d 734 (4th Cir. 1996) (allowing district court discretion in its
ability to *voir dire* jurors to ferret bias in favor of or against law enforcement); see
generally, Godfrey v. Irvin, 871 F. Supp. 577, 585 (W.D. N.Y. 1994)("Where the
trial judge has adequately instructed the jury on the general rules assessing the
credibility of witnesses, and the petitioner's testimony has not been singled out for
special scrutiny, a specific jury charge regarding the credibility of police witnesses
is not necessary."); People v. Holcomb, 532 P.2d 45, 49 (Colo. 1975)(affirming
charge "testimony of police officers should bear no more weight in your minds
than the testimony of any other private citizen. . . .").  This is not to suggest the

-20-

have been recorded by DNR in its report – it was not. Third, Newsome III was injured in the boat accident and was in shock raising the question of reliability. JA 318. Further, the circumstances surrounding Robinson's presence at the lake should have been of no relevance to the investigation surrounding the circumstances of the accident which, again, begs the question of reliability of the statement. If the most critical aspect of this exception are truth and circumstances of the statement, then Newsome III's statement should have been corroborated by other evidence. Id. It was not. In fact, the greater weight of the evidence supports the conclusion that Robinson was present for work. JA 204; 206; 282; 505-06; 509; 515-17.

This Court has cautioned that the residual exception "is a narrow exception that should not be construed broadly" and that to "construe it broadly would easily cause the exception to swallow the rule." United States v. Dunford, 148 F.3d 385, 394 (4th Cir. 1998). The residual exception "cannot be expanded to swallow the hearsay rule as a whole." Zee, 871 F. Supp.2d at 507 (citing Akrabawi v. Carnes Co., 148 F.3d 688, 697 (7th Cir. 1998)).

As discussed above, the District Court considered the issue of whether a negative inference was appropriate in the case. JA 590. The District Court properly

---

court below was biased, but rather to highlight the fact there is no legal presumption of trust merely because law enforcement provides testimony.

-21-

concluded that it was not, noting that Auto-Owners is a third party to any criminal claims against Newsome III.  JA 590.  However, the District Court then, in admitting the hearsay under the residual exception, notes that the statement is "the most probative evidence . . . [and] Newsome III has refused to testify."  JA 592-93.[5]  The District Court, in essence, applied a negative inference when it noted as a basis for the admission of Newsome III's statement was his refusal to testify and further noted the testimony as "*the most probative evidence*."  "While it may be true that an individual should suffer no penalty for the assertion of a constitutional right, **neither should third parties [ ] who have no apparent interest in the criminal prosecution, be placed at a disadvantage thereby**." Wehling v. Columbia Broad. Sys., 608 F.2d 1084, 1088 (5th Cir. 1979)(citing Jones v. B. C. Christopher & Co., 466 F.Supp. 213, 227 (D.Kan.1979)(emphasis added).   "Though constitutionally protected, a civil litigant's invocation of the privilege against self-incrimination during the discovery process is far from costless."  United States v. Certain Real Prop. & Premises Known as 4003-4005 5th Ave., Brooklyn, N.Y., 55 F.3d 78, 82-83 (2d Cir. 1995).  "It will, for example, always disadvantage opposing parties-at least to some extent-since it keeps them from obtaining information they could otherwise get."  Id.  (see SEC v.

---

[5]  Although Newsome III refused to testifiy, he did admit that Robinson was working at the time of the incident in his answer to the complaint. JA 37-42.

Graystone Nash, Inc., 25 F.3d 187, 190 (3d Cir.1994) ("[I]nvocation of the Fifth Amendment poses substantial problems for an adverse party who is deprived of a source of information that might conceivably be determinative in a search for the truth.")). "Nevertheless, because litigants do not have a right to discovery of privileged matters, see Fed.R.Civ.P. 26(b), such litigants, even if deprived of key facts through an opposing party's assertion of the Fifth Amendment, often have no recourse in the civil litigation other than to comment upon the claim of privilege in the hope of persuading the trier of fact to draw a negative inference." Id.; see Baxter v. Palmigiano, 425 U.S. 308, 318-20 (1976); Brown v. United States, 356 U.S. 148, 159 (1958) (Black, J., dissenting).

The Supreme Court stated in Baxter v. Palmigiano, "the prevailing rule that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered **against them**: the Amendment 'does not preclude the inference where the privilege is claimed by a party to a Civil cause.'" 425 U.S. 308, 96 S.Ct. 1551 (1976)(quoting 8 J. Wigmore, Evidence 439 (McNaughton rev. 1961))(emphasis added); see ePlus Tech., Inc. v. Aboud, 313 F.3d 166, 179 (4th Cir. 2002). However, the Supreme Court has also held that a party may not "convert the privilege from the shield against compulsory self-incrimination which it was intended to be into a sword whereby a claimant

-23-

asserting the privilege would be freed from adducing proof in support of a burden which would otherwise have been his."[6] United States v. Rylander, 460 U.S. 752, 758 (1983). Here, Auto-Owners has been significantly prejudiced by the admission of uncorroborated hearsay. While the District Court on the one hand refused to apply a negative inference, on the other it noted Newsome III's refusal to testify as a basis for admission of the evidence which is the foundational "fact" supporting the District Court's decision. JA 592-93. The statement should not have been admitted.

## II. THE DISTRICT COURT MISINTERPRETED THE "CO EMPLOYEE" EXCLUSION BY FAILING TO FIND THAT ROBINSON WAS PERFORMING DUTIES RELATED TO THE CONDUCT OF THE INSURED'S BUSINESS OR THAT ROBINSON WAS ACTING IN THE COURSE AND SCOPE OF HIS EMPLOYMENT ON OCTOBER 7, 2009.

### *General Principals of South Carolina Insurance Law*[7]

Insurance policies are subject to the general rules of contract construction. B.L.G. Enterprises, Inc. v. First Financial Ins. Co., 514 S.E.2d 327 (S.C. 1999). A court must give policy language its plain, ordinary, and popular meaning. Id. When

---

[6] As noted *infra*, § II, the burden of proof is on the insured to show that a claim falls within the coverage of an insurance contract, and the insurer bears the burden of establishing exclusions to coverage. The burden of proving exceptions to exclusions rests with the insured.

[7] The parties agree that South Carolina law applies to this coverage action. JA 599; see also Erie Railroad v. Thompkins, 304 U.S. 64 (1938); Unison Ins. Co. v. Hertz Rental Corp., 436 S.E.2d 182 (S.C. Ct. App. 1993) (reh'g denied); South Carolina Code Ann., § 38-61-10 (Supp. 2003).

-24-

a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used. Id. "Under South Carolina law, the plain and ordinary meaning of terms used in a contract of insurance may be obtained by reference to standard dictionaries." Travelers Indem. Co. v. Kinney, 28 F.3d 1210 (4th Cir. 1994). In assessing an alleged ambiguity, the court must consider the contract as a whole, rather than deciding whether phrases in isolation could be interpreted in various ways: "[o]ne may not, by pointing out a single sentence or clause, create an ambiguity." Yarborough v. Phoenix Mut. Life Ins. Co., 225 S.E.2d 344, (S.C. 1976). Instead:

> [i]n construing and determining the effect of a written contract, the intention of the parties and the meaning are gathered primarily from the contents of the writing itself, or, as otherwise stated, from the four corners of the instrument, and when such contract is clear and unequivocal, its meaning must be determined by its contents alone; and a meaning cannot be given it other than that expressed. Hence words cannot be read into a contract which import an intent wholly unexpressed when the contract was executed.

McPherson v. J.E. Sirrine & Co., 33 S.E.2d 501, 509 (S.C. 1945); see also, Schulmeyer v. State Farm Fire & Cas Co., 579 S.E.2d 132, 134 (S.C. 2003).

In cases where there is no ambiguity, contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood in their plain, ordinary and popular sense. Rhame v. National Grange Mut. Ins. Co., 238 S.C. 539, 121 S.E.2d 94 (1961). If the intention of the

*parties* is clear, the courts have no authority to change the contract in any particular. Id. The construction of a clear and unambiguous contract is a question of law for the court. S.C. Dep't of Natural Res. v. Town of McClellanville, 345 S.C. 617, 550 S.E.2d 299 (2001). "Insurers have the right to limit their liabilities, and to impose whatever conditions they please on their obligations, provided they are not in contravention of some statutory inhibition or public policy." Rhame, 238 S.C. 539, 544, 121 S.E.2d 94, 96. Accordingly, "an insurer need not protect against all liabilities and a clause exempting certain liabilities from coverage is valid." Id. at 544. "Where the obligation stated in the policy is in general terms, it has been held that the insurer may insert as many clauses exempting particular risks from coverage as it sees fit, notwithstanding that its obligation is materially limited by such exclusions." Id.

The burden of proof is on the insured to show that a claim falls within the coverage of an insurance contract. Gamble v. Travelers Ins. Co., 160 S.E.2d 523 (S.C. 1979). The insurer bears the burden of establishing exclusions to coverage. Sunex Int'l Inc. v. Travelers Ins. Co., 185 F. Supp.2d 614, 617 (D.S.C. 2001). The burden of proving exceptions to exclusions rests with the insured. Helena Chem. Co. v. Allianz Underwriters Ins. Co., 594 S.E.2d 455, 460 n.5 (S.C. 2004).

In the case at bar, Newsome III, as the insured, has the burden of proof to show that Robinson's claim falls within the coverage of the garage policy. Auto-Owners

bears the burden of establishing exclusions to coverage. And, Newsome III has the burden of proving exceptions to any exclusions to coverage.

### *Ambiguity*

The District Court held that the co employee exclusion is ambiguous. JA 594. Auto-Owners disagrees. The Fourth Circuit has upheld a similar clause finding the same unambiguous in the context of automobile coverage. Bevans v. Liberty Mut. Ins. Co., 356 F.2d 577, 581-82 (4th Cir. 1966)(applying Maryland law).[8] In Bevans, the Fourth Circuit upheld the "fellow employee exclusion" finding that worker's compensation is the exclusive remedy for the injured employee. Id. at 581. In fact, the Fourth Circuit held that the exclusion was designed to prevent a scenario whereby the employee could recover both worker's compensation benefits and "other types of employer liability insurance from their mutual employer and, in addition, general liability insurance from the named insured's carrier." Id. This Court looking to the clear intent of the policy found no ambiguity and found no coverage to exist. Id.

Here, the District Court embraced the exact result that Bevans sought to

---

[8] See Derflinger v. Ford Motor Co., 866 F.2d 107, 110 (4th Cir. 1989) (federal courts are bound by their "prior decisions on what is the law of a state in a diversity case" until later state court ruling or legislative enactment makes the federal decision "clearly wrong"); McMellon v. United States, 387 F.3d 329, 333 (4th Cir. 2004) (en banc) (when Fourth Circuit panel opinions conflict, "the earlier of the conflicting opinions" governs).

-27-

prevent, i.e. recovery of liability insurance, and leaving open the potential for worker's compensation benefits. JA 282-88; 517. In this instance, the insured and Auto-Owners agree that the "co employee" exception is applicable. Instead, the District Court adopted Robinson's arguments and opined that she was not restricted from advancing her position in contradiction to the contracting parties interpretation of *their* contract.[9]

The South Carolina Supreme Court has made it clear that a third party to an insurance contract has no standing to assert claims against that insurer. The South Carolina Supreme Court has held that:

> the injured person is not a party to the [insurance] contract and has . . . no primary standing to litigate a dispute between the insured and insurer until and unless he establishes liability against [the insured]. Before judgment is obtained on a tort claim, the standing of the parties to the policy and the standing of the injured party are greatly different.

Park v. Safeco Ins. Co. of America, 162 S.E.2d 709, 711 (S.C. 1968); see also, Kleckley v. Northwestern National Cas. Co., 526 S.E.2d 218 (S.C. 2000) (holding

---

[9] It cannot be seriously argued that the policy holder did not have an economic interest in the existence of insurance coverage. The mere fact that the insured agrees [see supra, n.5] with Auto-Owners that coverage should not exist is significant and should have been given some weight by the District Court. Instead, in footnote 13, the District Court held that South Carolina law allows the third party claimant the ability to litigate the matter.

South Carolina law does not allow third party bad faith). Importantly, "an injured person, has no greater right under the liability insurance policy than has the insured." Crook v. State Farm Mut. Auto. Ins. Co., 112 S.E.2d 241, 245 (S.C. 1960).

In the case at bar, as it relates to the "co employee" exclusion, Auto-Owners and its insured agree it applies. The District Court's conclusion in footnote 13 that the understanding between the parties was of no consequence and that Robinson could herself "argue in favor of coverage" is incorrect. In support, the District Court cited two opinions. Breezewood of Wilmington Condo. Homeowers' Ass'n, Inc. v. Amerisure Mut. Ins. Co., 335 F.App'x 268, 270 (4th Cir. 2009)(applying North Carolina law allowing third party standing by contractual assignment but finding no coverage); Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 375 (4th Cir. 1994)(holding dispute over coverage between insured, insurer, and third party is an "actual case and controversy"). Neither opinion applies South Carolina law.

Here, contrary to the District Court's ruling, Robinson has no standing to litigate this matter. Even if Robinson has standing, she has no "greater right under the liability insurance policy than the insured" and the insured, Newsome III, *agrees* that no coverage exists under the policy. The District Court afforded no deference to the understanding between the contracting parties. Critically, all of the decisions cited by the District Court contemplate construction of the insurance policy "which is most

-29-

favorable to the insured." There is no mention, in any decision, cited by the District Court that the construction of the policy should be in favor of the "third party claimant" which is what has occurred here. JA 600. While Auto-Owners believes that the policy is unambiguous, even if it were ambiguous, the "construction of the policy" must be to the deference of the "insured" – not the third party claimant. It was error for the District Court to construe the subject policy in favor of Robinson without deference to the contracting parties. See Auto-Owners Ins. Co. v. Rhodes, 748 S.E.2d 781, 788 (S.C. 2013)("recognizing that no privity of contract exists between an insurance company and a third party who may benefit from indemnification unless the insurance contract specifically lists the third party as a beneficiary."); McPherson By and Through McPherson v. Michigan Mut. Ins. Co., 412 S.E.2d 445, 464 (S.C. Ct. App. 1991)("The right to indemnity is personal to the indemnitee and creates no legal or equitable interest in third party beneficiaries by contract or lien"); Shupe v. Settle, 445 S.E.2d 651, 655 (S.C. Ct. App. 1994)(claimant held not third party beneficiary under insurance policy); Helms Realty, Inc. v. Gibson-Wall Co., 611 S.E.2d 485, 488 (S.C. 2005)("A third party beneficiary is a party that the contracting parties intend to directly benefit."); Colony Ins., 698 F.3d at 1230 (holding must consider the contracting parties intent to a third party liability suit as reflected in the policy); First Nat'l State Bank v. Commonwealth Fed. Sav. & Loan, 610 F.2d 164, 170 (3d Cir.

-30-

1980)(absent intent by the contracting parties to benefit the third party claimant one who has no benefits from the contract has no right to sue thereunder); United Gas Pipeline Co., 27 Fed. Energy Reg. Comm's Rep. 61199 (1984), 1984 WL 56669 at *4 ("Contracting parties are given great deference and third parties have a difficult task of overcoming that deference.").  While it is true that Auto-Owners joined Robinson in this lawsuit, under the analogous analysis of Park, 162 S.E.2d at 711 and its progeny, the District Court should have given deference to the contracting parties.

### _Employment Law Under South Carolina Law_

"It is well established that an employee **need not be engaged in the 'actual performance' of his express duties to be acting within the scope of his employment**." General Acc. Ins. Co. v. Safeco Ins. Companies, 443 S.E.2d 813, 819 (S.C. Ct. App. 1994)(interpreting garage liability policy)(emphasis added).  "It is sufficient if the employee is engaged in a pursuit or undertaking consistent with his contract of hire and which in some logical manner pertains to or is incidental to his employment."  Id. (quoting Beam v. State Workmen's Compensation Fund, 200 S.E.2d 83, 86 (S.C. 1973)(employee's injury in car accident while traveling to meeting "to be held the next day" held compensable)).  "'In the course of employment' refers to the time, place and circumstances under which the accident occurs."  Loges v. Mack Trucks, Inc., 417 S.E.2d 538, 540 (S.C. 1992).  "An injury arises out of

-31-

employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal relationship between the conditions under which the work is to be performed and the resulting injury." Id.

In General Accident, supra, the South Carolina Supreme Court held that an employee attending a sales meeting was "necessary or incidental" to his employment so as to find coverage for him under garage liability policy for injuries to a third party who was hit by the employee while driving a company vehicle. Factually, an employee was attending a national meeting on Hilton Head Island, South Carolina. While returning from dinner with colleagues, the employee was involved in an automobile accident. The insurer took the position at trial that driving a company owned vehicle while returning from dinner on the day before the meeting actually was to commence was outside the course and scope of his employment. The supreme court disagreed, and found that it was not necessary that he be in the "'actual performance' [of] his express duties to be acting within the scope of his employment." Id. at 819. The supreme court stated that "[i]t is sufficient if the employee is engaged in a pursuit or undertaking with his contract of hire and which in some logical manner pertains to or is incidental to his employment." Id.

Here, John H. Newsome, Jr. ("Newsome") testified that JNI owned the 2004 cigarette speedboat that was involved in the incident. JA 247. He also agreed that the

-32-

speedboat was purchased in order to clean it up and get it in shape and sell it and make a nice profit. JA 247. Mr. Newsome described the speedboat as being "a pretty big boat," and that to even "get in it you had to get a ladder." JA 249. He further testified that although he did not have any specific knowledge as to the weight, he described it as being "real heavy," and that "I know that one person can't just, you know, move that boat around." JA 250. He also noted that the trailer used to haul the speedboat had two or three axles. JA 250. Newsome testified that he had "driven a boat similar to it," and stated that "you could drive it by yourself. As far as maneuver - - getting it in and out of the water, you'd need help. It would be almost impossible for one person to do it." JA 250-51.

Officer Godowns testified that as part of his training he participated in a special four-week class in boats and operating boats. JA 311. He further testified that he had operated boats of equal size, and greater, to that of the boat involved in this incident. JA 311-12. When asked about whether it takes much skill to hold a line or rope, Officer Godowns testified "I don't think so, no, sir." JA 314. He further agreed that "just having a hand on the boat to help maneuver around other objects, trailers" is helpful "even if that person helping is not trained to help maneuver a boat." JA 314. Office Godowns noted that "you just have to instruct them what to do." JA 314.

Adams testified that Robinson was a full-time employee, and she was not aware of Robinson ever taking days or afternoons off.  JA 243.  She stated that Robinson's normal working hours were "8:00 to 5:00" from "Monday through Friday."  JA 206; 212.  Adams agreed that some of Robinson's duties were to run errands at times, take cars to auction or help bring them back to the auction, as well as doing yard work off JNI property.  JA 243.  She stated that Robinson would have been paid by JNI for these types of services.  JA 243.

Adams testified that Robinson's timecard showed that on the date of the incident that "7:57 is when he clocked in for the morning, 1:16 is when he clocked out for lunch, and came back from lunch at 1:58."  JA 205.  Adams testified that she handwrote 5:00 on Robinson's timecard "to show what time I used to compile the hours that he was paid."  JA 206.  She stated that "he normally left at 5:00, so I made it a complete day."  JA 206.  When asked whether Adams - the person in charge of his payroll - had any reason to believe that Robinson was not working on October 7, 2009, she testified "No."  JA 244.  Furthermore, Adams testified that JNI issued a paycheck for Robinson's work on October 7th in the amount of $63.67.  JA 206.

There was credible evidence that Robinson was performing at least "some act" in the furtherance of the business of JNI by the fact he could assist in the cleaning, docking, handling, and/or launching of the boat.  Jones, 34 S.E.2d at 798-99("If the

servant is doing some act in furtherance of the master's business, he will be regarded as acting within the scope of his employment . . ."). Additionally, the District Court places great weight on the notion that Robinson was not qualified to perform boat repairs and/or maintenance. JA 603. However, neither was Newsome III qualified to perform boat repairs and/or maintenance, and the District Court determined that Newsome III was working. JA 590.

Whether Robinson was qualified to perform boat repairs and/or maintenance is not the test or standard. Under General Accident, supra, if the work being performed is "incidental" to his employment, that is sufficient for the nexus as being within the scope of the person's employment. There was clear, and "credible testimony" as per the District Court by John Newsome, Jr., that one person could not launch, handle, and recover the boat. JA 597. While the District Court notes that "at some point on the day in question there was another person" at the Lake, it is pure speculation on the part of the fact finder as to what that "person" may have been doing at the lake as no evidence regarding the same was admitted.

Second, as noted by the District Court, in footnote 14 [JA 602], coverage would be excluded if "Robinson was performing duties related to the conduct of JNI's business **_OR_** if Robinson's injuries arose out of and in the course of his employment." JA 602 (emphasis added). The District Court relied solely upon the notion that

-35-

Robinson was on a "joy ride" to conclude that he could not have been performing duties related to the conduct of JNI's business.[10] The District Court ignored the evidence that two persons were needed to launch, handle, and recover the boat. JA 250-51. Further, evidence was presented that he was "on the clock" for a full day, it was a Wednesday between Robinson's work hours of 8:00 to 5:00, he was paid a full day's wage, he was wearing his uniform, and that the entire reason for being at the lake that day was to "test" the boat which was to be sold by JNI for a profit. While Robinson, like Newsome III, was not a mechanic or actually performing repairs on the boat at the time of his death, it is an incorrect conclusion that Robinson was not performing at least some act in furtherance of JNI's business by being there on the day of the accident and at the same time conclude that Newsome III was performing duties "necessary or incidental" to JNI's business. General Accident, 443 S.E.2d 813.[11]

_____

[10] No questions were asked of any witness seeking to explain what was meant by "joy ride". It is conceivable that a person can "joyfully work" while riding on a boat.

[11] The conclusion by the District Court that Robinson was neither acting in the course and scope of his employment, nor performing any actual repairs on the boat at the time of his death reflects the inconsistency of the decision. Here, if it is assumed that the boat was being tested – which was a continuation of the "servicing or repairing" of the boat and that the boat was being repaired so as to be sold for a profit, Robinson's presence in assisting with the launching and recovery of the boat must be incidental to his employment. This will be discussed further in Section III, *infra*.

While not controlling authority, <u>Maketa v. Butcher</u>, 45 A.2d 256 (Pa. 1946), is similar to the case at bar.  In <u>Butcher</u>, the defendant was in the business of selling and repairing cars.  The plaintiff was an employee of the garage, was not restricted from performing work at the garage, and from time to time assisted in the delivery of cars.  One day, the plaintiff brought a motor boat to the garage for repairs.  After completion of the repairs, the boat was taken to a lake to be tested during normal business hours, the plaintiff was in uniform, and went to the lake to assist in the launching of the boat.  Unfortunately, plaintiff was ejected from the boat and drowned.  Plaintiff argued that he went to the lake for no business purpose and was there solely for his own benefit.  The Pennsylvania court rejected this factual argument stating that it was also a legal question as to whether plaintiff was at the lake for some business purpose.  The purpose of him being at the lake that day bore some relationship to the business of the defendant, and thus, was properly governed by worker's compensation laws.  <u>See also</u>, <u>General Accident</u>, <u>supra.</u>  At a minium, Robinson was performing a task incidental to his employment, and thus, the exclusion applies.

### _Newsome III was not an Insured for causing injury to fellow employee_

As an alternative argument, Auto-Owners argued that the "co-employee" exclusion should be read as follows:  "an employee (Newsome III) is not an insured

when the employee (Newsome III) causes bodily injury to a co employee (Mr. Robinson) while in the course of the employee's (Newsome III's) employment." JA 594-95. The District Court held (1) that Auto-Owners never raised this argument in any pre-trial proceedings; (2) that Auto-Owners argument was not consistent with the policy; and (3) found the language ambiguous. Id.

First, as acknowledged in the final Order, Auto-Owners raised this issue at the trial of the matter and it was not raised as a basis for summary judgment. However, there is no requirement that all issues be presented at summary judgment stage. Waldie v. Schlesinger, 509 F.2d 508, 511 n.2 (D.C. Cir. 1974) ("Of course, at trial plaintiffs are not bound to the limited claim they raised for purposes of their partial summary judgment motion. Instead, they may, if they wish, try the cases on their original complaints."). In fact, this issue was raised in the summary judgment argument *by Robinson.* JA 93-94. The issue was properly before the court at trial.

Second, there are at least two immutable facts – Newsome III and Robinson were employees of JNI. Newsome III is the individual who is, according to the District Court, covered under the subject policy. Robinson is the claimant. Thus, it is entirely logical to interpret the policy from the standpoint of the person seeking protection under the policy, i.e. Newsome III. The District Court is correct in holding that employees can be insured under the policy for acts within the scope of their

employment, or as long as they are performing duties related to the conduct of the insured's business.  Newsome III is protected by the policy so long as he does not cause injury to another employee.  When an employee injures another employee that is a matter for worker's compensation coverage – not a garage liability policy intended to protect the employee from a claim by a "third party."  The District Court identified Auto-Owners argument correctly:    "an employee (Newsome III) is not an insured when the employee (Newsome III) causes bodily injury to a co employee (Mr. Robinson) while in the course of the employee's (Newsome III's) employment."  JA 594-95.    To construe it otherwise, would read the "co employee" exclusion meaningless.  The District Court, when discussing the intent of the policy form, left out the entire passage of the "co employee" exclusion found at JA 425, *compare* JA 589.  The policy states, "[t]his insurance does not apply to:    (2) Bodily injury to:  a) an employee of the insured arising out of and in the course of employment by the insured; or . . . This exclusion applies:    (a) whether the insured may be liable as an employer <u>or in any other capacity</u>."  JA 425 (emphasis added).  Here, the intent is clearly to make the exclusion broad.  <u>See also</u>, <u>Bevens</u>, 356 F.2d at 580-81.

Finally, there is nothing ambiguous about the exclusion.  As set forth above, "[i]t is well established that an employee need not be engaged in the 'actual performance' of his express duties to be acting within the scope of his employment.

General Accident, 443 S.E.2d at 819. "It is sufficient if the employee is engaged in a pursuit or undertaking consistent with his contract of hire and which in some logical manner pertains to or is incidental to his employment." Id. (quoting Beam v. State Workmen's Compensation Fund, 200 S.E.2d 83, 86 (1973). Here, Newsome III was working for JNI at the time of the accident and it is undisputed that Robinson was an employee of JNI. It is not necessary, as the District Court concluded, that Robinson's death be caused by the actual performance of his *express* duties. JA 593-598. Rather, it is clear that he was at least performing "some act" which was "necessary and incidental" to his employment. Jones, 34 S.E.2d at 798-99; General Accident, 443 S.E.2d 813.

## III.   THE DISTRICT COURT MISINTERPRETED THE "WATERCRAFT" EXCLUSION BY HOLDING THAT TEST DRIVING A WATERCRAFT OWNED BY THE INSURED CONSTITUTES "REPAIR AND SERVICE" TRIGGERING THE "EXCEPTION TO THE EXCLUSION."

Whether a policy of insurance is ambiguous is a question of law in the first instance. Silver v. Abstract Pools and Spas, Inc., 658 S.E.2d 539 (S.C. Ct. App. 2008). "[W]ords cannot be read into a contract which import an intent wholly unexpressed when the contract was executed." McPherson v. JE Sirrine & Co., 33 S.E.2d 501, 509 (S.C. 1945). In this instance, Auto-Owners believes the policy is unambiguous given the fact it clearly intends to exclude coverage for watercraft while it is in operation. It is undisputed that the watercraft was in operation at the time of

the accident. Equally true, the boat was being taken on a test drive following repairs previously provided. The District Court essentially held that a "test drive" is equivalent to a continuation of "repair or service" so as to reach an exception to the exclusion. In furtherance of this holding, the District Court found the policy language to be ambiguous. These conclusions are erroneous.

The policy is not ambiguous. The policy excludes from coverage bodily injury arising out of the use of a watercraft. It is undisputed that the 38 foot boat is a "watercraft" as defined by the policy. It is factually undisputed that the boat was being used at the time that Robinson was ejected. The word "use" includes operation, according to the policy. JA 425. The exception to the exclusion which the District Court relied makes the exclusion inapplicable for "any watercraft <u>while being serviced or repaired</u> by any insured." JA 425 (emphasis added). The District Court ignored the words "while being" which came before "serviced or repaired." The fact that "while being" comes before "serviced or repaired" contemplates that active service or repair is taking place. There was no evidence presented demonstrating that active "repair or service" was being performed on the boat when it was being operated. In fact, the DNR officer testified that he agreed that there were no active repairs being performed while it was in operation, and that it was his opinion that the lower unit or foot of the engine could not be repaired while the boat was being operated. JA 357-

-41-

58.  At best, the boat was being tested to determine if prior repairs were satisfactory. The District Court reads "test drive" into the policy as being equivalent to "service or repair."  This is improper.  Torrington Co. v. Aetna Cas. & Sur. Co., 216 S.E.2d 547, 550 (S.C. 1975) ("parties have a right to make their own contract and it is not the function of this Court to rewrite it or torture the meaning of a policy to extend coverage never intended by the parties."); S.C. Ins. Co. v. White, 390 S.E.2d 471 (S.C. Ct. App. 1990) (An insurer's obligation under a policy of insurance is defined by the terms of the policy itself and cannot be enlarged by judicial construction.).

The garage policy clearly intends to exclude coverage for watercraft, unless it is actively being repaired or serviced.  Additionally, factually, a garage liability policy contemplates some third party bringing a vehicle/watercraft to the garage to be repaired.[12]  If a third party brings a vehicle/watercraft to be repaired, extending the notion of a "test drive" to "servicing or repairing" the vehicle is reasonable.  Here, however, the watercraft at all times was owned by the insured, JNI, *and* there was evidence that persons other than JNI performed the work.  In other words, this was not a third party's vehicle which was given to JNI to be repaired.  Rather, it was JNI's

---

[12]  "We shall pay for direct physical loss of or direct physical damage to an auto . . . watercraft <u>not</u> owned, leased or rented by you . . . when such watercraft . . . is in your care custody or control for storage, service or repair."  JA 474 (emphasis added).

-42-

watercraft that was being tested following repairs performed by someone else, for the ultimate purpose of sale.

Even if considered ambiguous, the District Court did not apply the plain meaning of the undefined words within the policy. "Courts may look to a dictionary to decipher the meaning of . . . undefined terms." Campbell, Inc. v. Northern, Ins. Co. of New York, 337 F. Supp.2d 764, 767 (D.S.C. 2004) (citations omitted).[13] The words at issue which are undefined in this policy are "operated," "repaired," and "serviced." Each of these words are used in the everyday English language. Looking to the dictionary, "Serviced" means "to repair." Merriam-Webster's Collegiate Dictionary 1070 (10th ed 1993). "Repaired" means "to restore by replacing a part or putting together what is torn or broken." Id. at 991. "Operated" means "to cause to function: work, . . . to put or keep in operation. Id. at 814-15. Here, the policy refuses coverage if the boat is being "operated," but grants coverage "while being serviced or

_____

[13] No South Carolina court has addressed the interpretation of a "watercraft exclusion" in the context of facts similar to this matter, other jurisdictions have interpreted the exclusion. See First Speciality Ins. Corp. v. American Home Assurance Co., 558 F.3d 97 (1st Cir. 2009) (holding watercraft exclusion of CGL policy bared loss arising from barge operated by insured which resulted in property damage); Crane v. Royal Ins. Co. of America, 17 F.3d 1186 (9th Cir. 1994) (upholding watercraft exclusion for injuries arising out of use of watercraft); Kinsella v. Wyman Charter Corp., 417 F. Supp.2d 159 (D. Mass. 2006) (insurer granted summary judgment on watercraft exclusion arising out of death of passenger ejected from boat).

repaired." The fact that the words "while being" come before "serviced or repaired" contemplates activity. Because the Court finds that the boat was being operated at the time that Robinson was on the watercraft, and there was no evidence that the boat was actively being serviced or repaired while it was being operated, the exception to the exclusion does not apply.[14]

"The foremost rule in interpreting an insurance contract is to give effect to the intent of the parties as shown by the language of the contract itself." Laidlaw Environmental Services, Inc. v. Aetna Cas. & Sur. Co. of Illinois, 524 S.E.2d 847, 850 (S.C. Ct. App. 1999). If the intention of the parties is clear, courts have no authority to torture the meaning of the policy language to extend coverage that was never intended by the parties. S. C. Farm Bureau Mut. Ins. Co. v. Wilson, 544 S.E.2d 848 (S.C. Ct. App. 2001). Rules of construction giving the *insured* the benefit of the doubt have "no application" in cases where "there is no ambiguity in the language of the insurance contract." Long v. Adams, 312 S.E.2d 262, 265 (S.C. Ct. App. 1984). There is a fundamental difference between a boat being "operated" or "serviced or

---

[14] It is noted that the watercraft itself was insured and, but for Judge Seymour's holding would have provided coverage for the watercraft while in "operation." Thus, it is not as if the insured itself did not contemplate the boat being insured by something other than the subject policy. In fact, no testimony was elicited from the policyholder suggesting an intent to insure the watercraft with the garage policy under these facts.

repaired." Furthermore, the boat itself was insured by American Modern. It was determined that the policy was void *ab initio*, but the fact that insurance was obtained on the boat is *some* evidence of an intent to insure it with liability coverage *other* than from the Auto-Owners garage policy. As set forth above, the subject policy is a "garagekeepers coverage form." JA 474. This form evidences why the policy is not intended to provide coverage for such a scenario *when the insured owns the property being tested*. The policy actually contemplates covering property owned by others. Id. Where the JNI garage was providing repairs to a boat and the boat was owned by a non insured, a different result might follow. Here, the garage policy was not intended to insure JNI's own property while in operation.

Turning to the District Court's decision, it relied on two opinions from jurisdictions other than South Carolina. Wakefield v. Twin City Fire Ins. Co., 2007 WL 2200597 (Conn. Super. Ct. July 5, 2007)(trial court unpublished opinion); Simpson v. Bridgestone/Firestone, Inc., 1994 WL 171680 (D. Kan. April, 1994)(unpublished opinion). Neither opinion are applicable to the facts of this case. They both address the denial of summary judgment, neither case applies South Carolina law, and the District Court's decision misconstrues these two opinions.

The District Court cites Wakefield, supra with a parenthetical explanation quoting the unpublished opinion: "denying summary judgment and noting that 'the

-45-

test drive was part of [plaintiff's] auto repair business because the test drive confirmed the initial diagnosis of [the] automobile and that the specific problem had been remedied by the repairs performed by the plaintiff.'" JA 604-05. However, the District Court misconstrues the quoted language as a comment from the trial court, when in fact the quoted language is merely the trial court's description of testimony from an affidavit by plaintiff that was included with plaintiff's memorandum opposing the defendant's motion for summary judgment. Id.

The District Court also cites Bridgestone/Firestone, Inc. with a parenthetical quoting the unpublished opinion: "noting that national repair chain's manual provided that 'a test drive is required for all services.'" JA 605. Here, the District Court failed to address the entire sentence that was quoted which actually states: "[t]he Firestone Mastercare Procedure Manual similarly provides 'the Service Manager or a designated alternate must make certain the vehicle has been test driven by Service personnel,' and further provides that a test drive is required for all services *which include wheel removal*." Id. (emphasis added). Thus, the opinion does not stand for the proposition cited by the District Court.

Regardless, both opinions contemplate vehicles that are *owned by garage customers* as opposed to a watercraft owned by the insured. Lastly, the District Court *assumes* that a test drive of the watercraft was necessary and was associated with the

-46-

"repair and service" of the boat. The court concludes that by accepting Auto-Owners argument that coverage could never exist when the boat is in "operation" would "read the exception out of existence." JA 604.

The District Court's conclusion is problematic for three additional reasons as well. One, there was no evidence presented that a test drive was the only way to test the repairs. Two, contrary to the District Court's holding, there are a number of ways that the exception to the exclusion could apply. If the boat were at the dock being worked upon, on a lift, on a trailer, or if an accident occurred while the boat was actively being repaired or serviced, coverage could exist. It is the fact that the boat was being "operated" that is fatal to the claim. Third, as a matter of law, no court applying South Carolina law has held that a "test drive" is synonymous with "repair and service." It is not Auto-Owners "read[ing] out of existence" the exception to the exclusion. Rather, the District Court is reading out of existence the exclusion by holding a test drive is equivalent to "repair and service" if the repair work has been performed on the watercraft prior to it being operated. In the context of the insured's owned property, which is not intended to be insured under the context of this claim [see supra, n.12], and in the absence of any evidence that the boat was actively "being serviced or repaired" at the time of Robinson's death the District Court's decision should not stand.

-47-

## CONCLUSION

Auto-Owners Insurance Company respectfully requests that this Court find:

(1)    The District Court erred in admitting hearsay in this case.

(2)    The "co employee" exclusion applies in this matter and serves as a bar to coverage for the claim presented by Robinson.

(3)    The "exception to the watercraft exclusion" does not apply because the watercraft was in operation at the time of the accident; and

(4)    As a result of the requests (2) and (3), _supra_, for an Order absolving Auto-Owners from any obligation to defend and/or indemnify Newsome III.

## REQUEST FOR ORAL ARGUMENT

Upon information and belief, the insurance issues presented in this matter applying South Carolina law have not been addressed by either the Fourth Circuit Court of Appeals, South Carolina Court of Appeals, or the South Carolina Supreme Court and, thus, Auto-Owners requests this Court grant oral argument as this is a case of first impression.

Respectfully Submitted,

Auto-Owners Insurance Company

By: */s/ Morgan S. Templeton*

Morgan S. Templeton
Peden Brown McLeod, Jr.
WALL TEMPLETON & HALDRUP, PA
145 King Street, Suite 300
Charleston, SC 29402
(843) 329-9500

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. <u>13-2416</u>     **Caption:** <u>Auto-Owners Insurance Co. v. Yvonne Robinson, et al.</u>

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines.  Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines.  Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the  type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [✓]  this brief contains <u>11,779</u> [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ]  this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger.  A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [✓]  this brief has been prepared in a proportionally spaced typeface using <u>WordPerfect 12</u> [*identify word processing program*] in <u>Times New Roman, 14 point</u> [*identify font size and type style*]; **or**

   [ ]  this brief has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s) <u>Morgan S. Templeton</u>

Attorney for <u>appellant</u>

Dated: <u>1/27/14</u>

# CERTIFICATE OF SERVICE

I certify that on ___1/27/14_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

SUSAN CAMPBELL
MCGOWAN, HOOD & FELDER, LLC
304 Church Street
Georgetown, SC 29440
(843) 833-8082

DAVID CORNWELL HOLLER
LEE ERTER WILSON HOLLER & SMITH, LLC
126 North Main Street
Sumter, SC 29151
(803) 778-2471

STEVEN RANDALL HOOD
MCGOWAN, HOOD & FELDER, LLC
1539 Healthcare Drive
Rock Hill, SC 29732
(843) 327-7800

RICHARD CARSON THOMAS
BARNES, ALFORD, STORK & JOHNSON
P.O. Box 8448
Columbia, SC 29202
(803) 799-1111

___/s/ Morgan S. Templeton_____

Signature

___1/27/14_____

Date