RECORD NUMBER: 13-2416(L)

# United States Court of Appeals

*for the*

# Fourth Circuit

**AUTO-OWNERS INSURANCE COMPANY,**

*Appellant/Cross-Appellee,*

– v. –

**YVONNE ROBINSON, individually and as the Personal Representative of the Estate of Deagose F. Robinson, deceased, JOHN HENRY NEWSOME, III, SOUTH CAROLINA AUTOMOBILE DEALERS ASSOCIATION SELF INSURED FUND, THE RANDOLPH HOPE COMPANY, INC.,**

*Appellees/Cross-Appellants.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA AT FLORENCE**

# BRIEF OF APPELLEE/CROSS-APPELLANT JOHN HENRY NEWSOME, III

DAVID CORNWELL HOLLER
LEE ERTER WILSON HOLLER &
SMITH, LLC
126 North Main Street
Sumter, SC 29151
(803) 778-2471

*Counsel for Appellee/Cross-Appellant
John Henry Newsome, III*

**CP** COUNSEL PRESS • VA – (800) 275-0668

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __13-2416__    Caption: __Auto-Owners vs. John Henry Newsome, III, et al__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__John Henry Newsome, III__
(name of party/amicus)

_____

 who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                      ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                         ☐ YES ☑ NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: s/David C. Holler          Date: April 2, 2014

Counsel for: John Henry Newsome, III

# CERTIFICATE OF SERVICE
*****************************

I certify that on _____April 2, 2014_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Morgan S. Templeton, Esquire
Wall, Templeton & Haldrup, PA
145 King Street, Suite 300, Charleston, SC  29402

Susan Campbell, Esquire
McGowan, Hood & Felder, LLC
304 Church Street, Georgetown, SC  29440

S. Randall Hood, Esquire, McGowan, Hood & Felder
1539 Health Care Dr., Rock Hill, SC  29732

Gerald Malloy, Esquire, Malloy Law Firm
108 Cargill Way, Hartsville, SC  29550

Richard C. Thomas, Esquire
Barnes, Alford, Stork & Johnson
P. O. Box 8448, Columbia, SC  29202

s/David C. Holler          April 2, 2014
(signature)                (date)

# <u>TABLE OF CONTENTS</u>

Corporate Disclosure Statement

Table of Authorities ........................................................................ ii

Jurisdictional Statement .................................................................. 1

Statement of Issues......................................................................... 1

Summary of the Argument.............................................................. 1

Argument......................................................................................... 2

      I.     Did the District Court improperly admit hearsay testimony from officers Godowns and Thompson pursuant to Rule 801(d)(2)(A) and 807 of the Federal Rules of Evidence?.......... 2

      II.    Did the District Court misinterpret the "co-employee" exclusion by relying on Robinson's subjective state of mind and thereby failing to find that Robinson was performing duties related to the conduct of the insured's business or that Robinson was acting in the course and scope of his employment on October 7, 2009? ............................................... 2

            Personal Comfort Doctrine........................................ 7

            Dual Purpose Doctrine .............................................. 8

            Slight Deviation......................................................... 9

      III.   Did the District Court properly interpret the "repair and service" exception to the exclusion of the Garage Liability policy? ...................................................................... 13

Conclusion ..................................................................................... 14

Certificate of Compliance

Certificate of Service

## <u>TABLE OF AUTHORITIES</u>

**Cases:**

*Ardis v. Combined Ins. Co.*,
    380 S.C. 313, 669 S.E.2d 628 (Ct. App. 2008) .................................. 11

*Auto Owners v. Personal Touch Med Spa, LLC*,
    763 F. Supp. 2d 769 (D.S.C. 2011) ...................................................... 6

*Cauley v Ross Builders Supplies, Inc.*,
    238 S.C. 38, 118 S.E.2d 879.................................................................. 8

*Crittenden v. Thompson–Walker Co.*,
    288 S.C. 112, 341 S.E.2d 385 (Ct.App.1986) ...................................... 6

*DiMaria v. Multimedia, Inc.*,
    308 S.C. 387, 418 S.E.2d 324 (Ct.App.1992) ...................................... 9

*Fisher v. City of Decatur*,
    99 Ind.App. 667, 192 N.E. 844 (Ct. App. 1934) ................................ 11

*Gibson v Spartanburg School District 3*,
    338 S.C. 510, 526 S.E.2d 725 (Ct. App. 2000) ............................... 8, 9

*Green v. Baron,*
    662 F. Supp. 1378 (S.D. Iowa 1987).................................................. 13

*Keating v. Goldick*,
    -- A.2d --, 2004 WL 772077 (Del. Super. 2004)................................. 2

*Kerrigan v. State,*
    304 S.C. 561, 406 S.E.2d 160 (S.C. 1991) .......................................... 7

*Maketa v. Butcher*,
    158 Pa.Super. 519, 45 A.2d 256 (1946) ............................................ 12

*Osteen v Greenville County School District*,
    333 S.C. 43, 508 S.E.2d 21 (1998)................................................... 7, 8

*Piper v. Neighborhood Youth Corps*,
90 S.D. 443, 241 N.W.2d 868 (S.D.1976)...........................................8

*S.C. State Budget & Control Bd., Div. of Gen. Serv., Ins. Reserve Fund v. Prince*,
304 S.C. 241, 403 S.E.2d 643 (1991) ...................................................6

*Stough v. Westinghouse Savannah River Co.*,
311 S.C. 129, 427 S.E.2d 716 (Ct. App.1993) ....................................9

**Rules, Statutes, and Other Authorities:**

Fed. R. App. Proc. Rule 28(i) .......................................................... 1, 2

Fed. R. Evid. Rule 801(D)(2)(A) .................................................... 1, 2

Fed. R. Evid. Rule 807.................................................................... 1, 2

1 Arthur Larson & Lex K. Larson,
*Workers' Compensation Law* (1990) ............................................. 8, 9

iii

## Jurisdictional Statement

Newsome III adopts by reference Auto Owners Jurisdictional Statement.

Rule 28(i), *Federal Rules of Appellate Procedure*.

## Statement of Issues

I.    DID THE DISTRICT COURT IMPROPERLY ADMIT HEARSAY TESTIMONY FROM OFFICERS GODOWNS AND THOMPSON PURSUANT TO RULE 801(D)(2)(A) AND 807 OF THE FEDERAL RULES OF EVIDENCE?

II.   DID THE DISTRICT COURT MISINTERPRET THE "CO-EMPLOYEE" EXCLUSION BY RELYING ON ROBINSON'S SUBJECTIVE STATE OF MIND AND THEREBY FAILING TO FIND THAT ROBINSON WAS PERFORMING DUTIES RELATED TO THE CONDUCT OF THE INSURED'S BUSINESS OR THAT ROBINSON WAS ACTING IN THE COURSE AND SCOPE OF HIS EMPLOYMENT ON OCTOBER 7, 2009?

III.  DID THE DISTRICT COURT PROPERLY INTERPRET THE "REPAIR AND SERVICE" EXCEPTION TO THE EXCLUSION OF THE GARAGE LIABILITY POLICY?

## Summary of the Argument

The district court erred in concluding Robinson was not acting within the course and scope of his employment and was thus a "co-employee" under the Auto Owners Garage policy. The district court improperly relied upon Robinson's alleged subjective state of mind, a contorted "lack of evidence", and inadmissible hearsay to reach a conclusion unsupported by any reasonable analysis of the facts under South Carolina law. Under any reasonable analysis of the facts, Robinson and Newsome were working for JNI at the time of the watercraft accident on October 7, 2009.

1

The district court properly determined that Newsome III and Robinson were operating the watercraft on Lake Prestwood as part of the repair and servicing process and thus fell within the "exception to the watercraft" under the Auto Owners Garage policy.

## Argument

**I.    DID THE DISTRICT COURT IMPROPERLY ADMIT HEARSAY TESTIMONY FROM OFFICERS GODOWNS AND THOMPSON PURSUANT TO RULE 801(D)(2)(A) AND 807 OF THE FEDERAL RULES OF EVIDENCE?**

Newsome III adopts by reference Auto Owners Argument with respect to this issue presented. Rule 28(i), *Federal Rules of Appellate Procedure*.

**II.   DID THE DISTRICT COURT MISINTERPRET THE "CO-EMPLOYEE" EXCLUSION BY RELYING ON ROBINSON'S SUBJECTIVE STATE OF MIND AND THEREBY FAILING TO FIND THAT ROBINSON WAS PERFORMING DUTIES RELATED TO THE CONDUCT OF THE INSURED'S BUSINESS OR THAT ROBINSON WAS ACTING IN THE COURSE AND SCOPE OF HIS EMPLOYMENT ON OCTOBER 7, 2009?**

There comes a point in every litigation where common sense will make some conclusions obvious.[1]  If the injured [party] were not involved in this litigation and were simply asked whether they believe an employee and his supervisor who used a company vehicle to tow a recently repaired boat to a lake for a test drive 'were acting within the scope of that employer's employment?',

---

[1]This analysis is borrowed from a declaratory judgment action. *Keating v. Goldick,* -- A.2d --, 2004 WL 772077 (Del. Super. 2004).

they would without hesitation say 'yes.'  Logic and common sense would lead any reasonable person to the same conclusion.  So when one starts from this premise, the question now becomes what is factually different in this case that would discount that conclusion.

It is undisputed and the Court clearly found Newsome III was acting within the scope of his employment ... and was "performing duties related to the conduct of JNI's business." JA 590. No evidence supports a different conclusion.  JA 591.  Newsome III was acting in the scope and course of his employer, JNI.  Newsome III was Robinson's direct supervisor.  JA 203.

Yet the reasoning of the district court is *non sequitur*.  If the definition of insanity is doing the same thing over and over and expecting a different result, this is exactly the result achieved by the district court.  The district court examined essentially the same facts for  both Newsome III and Robinson, yet reached a completely different result.  We respectfully submit this analysis is flawed and incomplete.

Two employees of JNI, Newsome and Robinson, were working on a watercraft in the JNI inventory.  JA 590-593.  Robinson was wearing a JNI uniform.  JA 209; 596.  Newsome III would occasionally buy and sell boats on behalf of JNI.  JA 591.  The watercraft had recently undergone repairs before this

3

occurrence.  JA 592.  JNI intended to sell the watercraft and make a profit once it was repaired.  JA 592.

Robinson clocked in on a 24-hour 365 day time clock. JA 505.  The court's machinations about the time card are illustrative.  "There was no testimony or evidence that anyone saw Mr. Robinson personally clock in or clock out."  JA 596.  The court's suggestion here is that JNI's time clock, or the time keeping process at JNI, cannot be considered reliable.  Such a claim is a complete fiction.  No one claims that Robinson's death was intentional.  Yet, the court's suggestion here casts doubts back in time (to 1:58 pm) when no one knew Robinson would tragically drown at around 3 pm.  This clearly illustrates that the district court has chosen a desired conclusion and is now backfilling (not with facts but) with the absence of facts that would otherwise ordinarily be accepted without question.  The district court seemingly introduces a purported conspiracy to overpay JNI employees because no one witnessed them clocking in or out of work.  If Robinson had not drowned, and if he was not working on  Wednesday afternoon, July 7, 2009, how then was he going to "clock out" to accurately record the time he work for JNI?

The district court's finding continues: "Mr. Robinson's time of death was approximately 3 pm, thus he could not have been working until 5 p.m. as his time

4

card indicates." JA 596. Virginia Adams, who was in charge of payroll, hand wrote "5 p.m." on the time card because "he normally left at 5:00 [p.m.], so I made it a complete day." JA 206. Again, the district court's conclusion strains the boundaries of reason by impeaching JNI's bookkeeper because she paid Robinson for a period of time after it is estimated that he accidently drowned. "Adams admitted that she wrote 5 p.m. as a clock-out time on Mr. Robinson's time card." JA 596.

"Ms. Robinson ... testified ... she was on the phone with Mr. Robinson for twenty-two minutes beginning at 12:51 p.m., and again for eighteen minutes beginning at 2:02 p.m." JA 596. The district court implicitly suggests that Robinson could not have been working because he was on a non-work related phone call during his work hours. While this concept may be a paradigm for employers, it is hardly a reality. That Robinson may have been on a personal phone call is not mutually exclusive of whether he was acting within the course and scope of his employment.

Similarly, whether Robinson "loved" or "was crazy" about the watercraft is only tangentially relevant. Whether Robinson was on a "joy ride" does not fully engage in the analytical process necessary to reach the conclusion that Robinson was acting outside the scope and course of his employment.

5

The South Carolina Supreme Court holds that it is reasonable to interpret the phrase "in the course of employment" in the manner in which it is interpreted in the master/servant liability and worker's compensation contexts. See *S.C. State Budget & Control Bd., Div. of Gen. Serv., Ins. Reserve Fund v. Prince*, 304 S.C. 241, 245–46, 403 S.E.2d 643, 646 (1991). In determining whether a person is acting within the scope of employment in the master/servant liability and worker's compensation contexts, courts in South Carolina generally ask whether a " 'servant is doing some act in furtherance of the master's business' " even if it is outside the scope of the servant's authority. *Id.* at 246, 403 S.E.2d at 646 (quoting *Crittenden v. Thompson–Walker Co.*, 288 S.C. 112, 115–16, 341 S.E.2d 385, 387 (Ct.App.1986)); *Auto Owners v. Personal Touch Med Spa, LLC*, 763 F. Supp. 2d 769, 783 (D.S.C. 2011). Applying this reasoning, the district court failed to address South Carolina's doctrines of personal comfort, dual purpose, or slight deviation in prematurely reaching a conclusion.

6

**Personal Comfort Doctrine**

Whether Robinson was joyfully[2] riding in a watercraft is not determinative of his employment status.  The district court implicitly found that Robinson was on the watercraft entirely for his own personal emotional well-being, or personal comfort:

> Such acts as are necessary to the life, comfort, and convenience of the servant while at work, though strictly personal to himself, and not acts of service, are incidental to the service, and injury sustained in the performance thereof is deemed to have arisen out of the employment. A man must breathe and occasionally drink water while at work.  In these and other conceivable instances he ministers unto himself, but in a remote sense these acts contribute to the furtherance of his work.... That such acts will be done in the course of employment is necessarily contemplated, and they are inevitable incidents.  Such dangers as attend them, therefore, are incident dangers. At the same time injuries occasioned by them are accidents resulting from the employment.

*Osteen v Greenville County School District*, 333 S.C. 43, 46-47, 508 S.E.2d 21, 22 (1998).  "The personal comfort doctrine has consistently been limited to imperative acts such as eating, drinking, smoking, seeking relief from discomfort, preparing to

---

[2]Joyriding, the temporary taking of an automobile (or other vehicle) without intent to permanently deprive the owner of the vehicle, is not at all consistent with the application of "joy ride" as it is used by the district court in this case.  For an example, see *Kerrigan v. State,* 304 S.C. 561, 406 S.E.2d 160 (S.C. 1991).  We have therefore simply used the term "joyful" as an emotion elicited by the act of riding in the watercraft.

begin or quit work, and resting or sleeping. Id. 333 S.C. at 47-48. In the instant

case, the district court determined (and all parties agree) that Newsome III's

operation of the watercraft was arising out of and within the scope of his job

duties. JA 590-598. In the instant case, Robinson was not engaged in an act of

personal comfort that would take him outside the scope of his employment duties.[3]

**Dual Purpose Doctrine**

The dual purpose rule in South Carolina is defined:

> [W]hen a trip serves both business and personal purposes, it is a
> personal trip if the trip would have been made in spite of the
> failure or absence of the business purpose and would have been
> dropped in the event of failure of the private purpose, though
> the business errand remained undone; it is a business trip if a
> trip of this kind would have been made in spite of the failure or
> absence of the private purpose, because the service to be
> performed for the employer would have caused the journey to
> be made by someone even if it had not coincided with the
> employee's personal journey.

*Gibson v Spartanburg School District 3*, 338 S.C. 510, 526 S.E.2d 725 (Ct. App.

---

[3]In *Cauley v Ross Builders Supplies, Inc*., 238 S.C. 38, 118 S.E.2d 879, the
Supreme Court recognized there are circumstances when injuries arising out of acts
outside the scope of an employee's regular duties may be compensable. These
circumstances have been applied to: (1) acts benefitting co-employees; (2) acts
benefitting customers or strangers; (3) acts benefitting claimant; and (4) acts
benefitting employer privately. Citing 1 Arthur Larson & Lex K. Larson, *Workers'
Compensation Law*, §§ 27.00-27.48. See Eg. *Piper v. Neighborhood Youth Corps*,
90 S.D. 443, 241 N.W.2d 868 (S.D.1976) (drowned while sleeping during lunch
break)(cited in *Osteen*, FN 3). Because Newsome III acted for his employer, none
of these apply here.

8

2000). See also *DiMaria v. Multimedia, Inc.*, 308 S.C. 387, 389, 418 S.E.2d 324,

324–25 (Ct.App.1992) (quoting 1 Arthur Larson & Lex K. Larson, *Workers'*

*Compensation Law* § 18.12 (1990)). "Stated another way, if the work of the

employee necessitates his travel, he is in the course of employment, even though he

is serving at the same time some purpose of his own.  The service to the employer

must be at least a concurrent cause of the trip, but not necessarily the sole cause."

*Stough v. Westinghouse Savannah River Co.*, 311 S.C. 129, 130–31, 427 S.E.2d

716, 717 (Ct. App.1993).

**Slight Deviation**

In *Gibson v. Spartanburg Sch. Dist. No. 3*, 338 S.C. 510, 521-522, 526

S.E.2d 725, 731 (Ct. App.2000), provides an explanation of a slight deviation:

> Courts now generally recognize that "human beings do not run on
> tracks like trolley cars," and therefore uphold awards in situations like
> the following:
>
> > getting cigarettes during a trip to or from work in the
> > employer's conveyance; running across the street in the
> > course of a delivery trip to buy a little food; driving a
> > daughter to school, dropping one's wife off at church,
> > leaving a message with one's sister about working late,
> > picking up mail for vacationing friends, crossing the
> > street during a beer break to retrieve one's lunch,
> > stopping at home to get a raincoat and leave some meat;
> > crossing the road during a delivery trip to have a glass of
> > beer at 2:00 in the afternoon; or to get a newspaper;
> > making a personal phone call; looking for a ring; picking
> > up two young ladies and taking them home while driving

9

> a car to test its brakes; buying a toy during spare time to
> take home to a child; and even picking cherries from a
> customer's cherry tree.  1 Arthur Larson & Lex K.
> Larson, *Workers' Compensation Law* § 17.06[3], pages
> 17-38 to 17-40 (1999) (footnotes omitted).

Assuming *arguendo* that Robinson "loved" the watercraft, that he "was crazy" about the watercraft, and was therefore on a "joy ride" [JA 597], the question is posed: Would Robinson - in the absence of testing the recently repaired boat - have ridden in the watercraft?  The only conceivable answer is "No".  Stated another way, if Robinson was not riding on the watercraft would the trip still have been made onto Lake Prestwood?  The only conceivable answer is "Yes".  Thus under the dual purpose doctrine, Robinson's presence on the watercraft was arising out of and in the course of his employment for JNI.

This is the only result that can occur given the district court's unequivocal finding that Newsome III was acting within the course and scope of his employment for JNI.  JA 590-593.   The subjective emotion of an employee is not and cannot be the determinative factor for defining the course and scope of an employees duties.

Even if Robinson was on the watercraft for "love" and "joy", his presence was only a slight deviation from his job responsibilities.  This is so even despite his lack of knowledge of boat operation or repair.  JA 595-596.  Robinson was with his

10

direct supervisor, Newsome III. JA 203. Although, as the district court speculates, Robinson may not have had specific job related duties on the watercraft, he was nonetheless subject to the direction of his employer for whatever reason may arise, e.g. launching or docking the watercraft, look out for navigation purposes, paddling in the event of engine failure, or even washing to the boat after the test was completed.

Finding Robinson's death by drowning away from his employer's premises is consistent with South Carolina case law and the law from other jurisdictions. In *Ardis v. Combined Ins. Co.*, 380 S.C. 313, 669 S.E.2d 628 (Ct. App. 2008)(employee's death occurred away from employer's premises), an employee attending out of town meeting who died from smoke inhalation due to hotel fire was acting within the scope and course of his employment. In *Fisher v. City of Decatur*, 99 Ind.App. 667, 192 N.E. 844, 845 (Ct. App. 1934), an employee "was where his duty called him and where he had a right to be and under the instructions given him should have been. Where an employee is charged with the performance of a specific duty and is found injured at a place where such duty called him, there is a legal presumption that he was injured as the result of and in the course of his employment." Id.

11

The case of *Maketa v. Butcher*, 158 Pa.Super. 519, 45 A.2d 256 (1946) is particularly instructive.  A garage employee described as a "utility or handy man" accompanied his employer to a lake for the purpose of testing a boat.  During the course of testing the boat, employee drowned.  The *Maketa* court noted:

> Decedent was a "utility or handy man" whose duties did not confine him exclusively to the employer's premises. Decedent "When the accident occurs off the employer's premises, the evidence must establish that the employee was actually engaged in furthering the business of the employer at the time of the accident.
> Even if the act in which the employee was injured was performed at the direction of the employer, but off the employer's premises, the work in which he was then engaged must have some connection or be concerned in some manner, but not necessarily close, with the business of the employer.

158 Pa.Super. at 522-523.  In finding the employee was acting within the scope and course of his employment, the *Maketa* court determined:

> The act which [employee] performed at [employer's] direction bore a real and substantial relation to the employer's business. The motor boat had been brought to the employer's garage, tested and repaired there with the employee's assistance, and it was to be stored there. True, it was not the employer's boat, but there is no evidence that the employee knew who owned the boat. Nevertheless, the boat was being processed in the employer's place of business, and to that extent it had some connection with his business.

12

In the present case, the JNI watercraft had been stored at the employer's garage, it had been tested and repaired with Robinson's assistance, and Robinson accompanied his direct supervisor who was taking the watercraft to Lake Prestwood for testing. The trip to Lake Prestwood was directly connected to the business of JNI.

### III.  DID THE DISTRICT COURT PROPERLY INTERPRET THE "REPAIR AND SERVICE" EXCEPTION TO THE EXCLUSION OF THE GARAGE LIABILITY POLICY?

The Auto Owners policy excluded watercraft [JA 425]. It provides, however, an exception to the exclusion for "Any watercraft while being serviced or repaired by an insured." Id.  The district court properly determined that this exception to the exclusion applied in this case.  JA 598.  Auto Owners asserts that because the watercraft was being operated in Lake Prestwood, it therefore was not being serviced or repaired.[4]

The undisputed sole purpose of Newsome III operating the boat on Lake Prestwood was to test its operation in a body of water.  JA 598-599.  To read Auto

---

[4]"Describing Newsome's activities on October 7, 2009 as simply operating a watercraft on Lake Prestwood is like describing The Wizard of Oz as a movie about Kansas. The description is technically accurate, but is completely misleading." *Green v. Baron*, 662 F.Supp. 1378, 1383 (S.D. Iowa 1987) *reversed on other grounds*.  The Wizard of Oz (Metro-Goldwyn-Mayer 1939) was based on L. Frank Baum, *The Wonderful Wizard of Oz* (Justin Knowles Publishing 1987) (1899).

13

Owner's exception to the exclusion otherwise would destroy the very purpose of the exception. Assume, for example, Newsome navigated the boat without incident at Lake Prestwood. Auto Owners would apply coverage while a mechanic is working on the boat, but not while is it operated in water for the purpose of diagnosis. No insured reading the policy could reasonably believe coverage would wax and wane in such an arbitrary fashion by reading the policy language.

Another example: Assume that while the engines were being operated in a repair facility (and thus out of the water) and subsequently caused a fire that resulted in injury and damages. Auto Owners could similarly assert that the engines were being operated at the time of the fire and similarly were not being serviced or repaired. The district court properly determined that the use of the watercraft in this instance fell within the exception to the exclusion.

## Conclusion

Appellee Newsome III respectfully submits that this Court find:

1.     The District Court erred in admitting hearsay in this case.

2.     The "co-employee" exclusion applies in this matter because both Newsome III and Robinson were acting in the course and scope of employment for JNI.

14

3.    The "exception to the watercraft exclusion" does apply because the watercraft was being operated as part of the repair and service process.

Respectfully Submitted,

*/s/ David Cornwell Holler*

DAVID CORNWELL HOLLER
Lee Erter Wilson Holler & Smith, LLC
126 North Main Street
Sumter, SC 29151
(803) 778-2471
Counsel for John Henry Newsome, III

15

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 13-2416(L        **Caption:** Auto-Owners Insurance Co. v. Yvonne Robinson, et al.

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[✓]    this brief contains _____3,383_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ]    this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[✓]    this brief has been prepared in a proportionally spaced typeface using
WordPerfect 12_____ [*identify word processing program*] in
Times New Roman, 14 point____ [*identify font size and type style*]; **or**

[ ]    this brief has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) David Cornwell Holler_____

Attorney for Appellee Johnny Newsome, III_____

Dated: 4/2/2014_____

# CERTIFICATE OF SERVICE

I certify that on <u>April 2, 2014</u> the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Peden Brown McLeod Jr.
Morgan Stuart Templeton
WALL TEMPLETON & HALDRUP, PA
145 King Street
P. O. Box 1200
Charleston SC 29402-0000
843-329-9500
brown.mcleod@walltempleton.com
morgan.templeton@walltempleton.com

Susan Campbell
Steven Randall Hood
MCGOWAN, HOOD & FELDER, LLC
304 Church Street
Georgetown, SC 29440
843-833-8082
scampbell@mcgowanhood.com

Steven Randall Hood
MCGOWAN, HOOD & FELDER, LLC
1539 Healthcare Drive
Rock Hill, SC 29732-0000
803-327-7800
rhood@mcgowanhood.com

Richard Carson Thomas, Esq.
BARNES, ALFORD, STORK & JOHNSON
P. O. Box 8448
Columbia, SC 29202-8448
803-799-1111
richard@basjlaw.com

/s/ David Cornwell Holler
_____
Signature

April 2, 2014
_____
Date